EDWARD HERZIG *v.* DONALD HORRIGAN
(12450)

DUPONT, C. J., LAVERY and SCHALLER, Js.

Argued May 2—decision released June 3, 1994

*Jason E. Pearl,* with whom was *J. Bruce Sussman,* for the appellant (plaintiff).

*William J. Prensky,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (third party garnishee).

DUPONT, C. J. The plaintiff appeals from the judgment of the trial court dissolving a garnishment and property execution served on agents of the state of Connecticut. The plaintiff challenges the trial court's conclusion that the doctrine of sovereign immunity bars the garnishment of a judgment debtor's Lotto winnings. We affirm the decision of the trial court.

The plaintiff obtained a summary judgment in the amount of $13,100 against the named defendant Donald Horrigan[1] for his failure to pay rent to the plaintiff. According to the plaintiff, the only asset of the defendant amenable to execution is the $1,093,531.75 Lotto prize won by the defendant in the Connecticut State Lotto drawing on July 11, 1986, payable in twenty annual installments of $54,676.58.

On March 5, 1993, the plaintiff attempted to garnish these payments by serving a property execution on the state lottery director, the executive director of the division of special revenue, the state deputy treasurer, one

---

[1] The named defendant, Donald Horrigan, is hereinafter referred to as the defendant. The state of Connecticut will be referred to as the state.

of the associate attorneys general, and an officer of the office of the state comptroller. The five agents served each refused to honor the property execution, and the state subsequently moved to dissolve the garnishment on the ground of sovereign immunity. The trial court granted the motion to dissolve, citing *Stillman* v. *Isham,* 11 Conn. 124 (1835), and *Doe* v. *Heintz,* 204 Conn. 17, 526 A.2d 1318 (1987).

The trial court found that, presently and through the year 2006, these payments are and will be made annually when the division of special revenue informs the comptroller via "a routine process known as an expenditure batch" that a payment is due to the defendant. The comptroller draws a check for $54,676.58 payable to the defendant from funds in the custody of the treasurer. This check is sent to the division of special revenue, which in turn forwards it to the defendant.

The issue raised by the plaintiff is a straightforward one. We must determine whether the doctrine of sovereign immunity protects the state from honoring a property execution on a judgment debtor's state lottery winnings. It is an ancient principle that the king, being the "fountainhead of justice," cannot be sued in his own courts. *Horton* v. *Meskill,* 172 Conn. 615, 623, 376 A.2d 359 (1977). This principle has developed into the common law doctrine of sovereign immunity. The source of sovereign power in the state of Connecticut is the constitution, and it is recognized that a sovereign is immune from suit "on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." Id., quoting *Kawananakoa* v. *Polyblank,* 205 U.S. 349, 353, 27 S. Ct. 526, 51 L. Ed. 834 (1907). This doctrine encompasses suits against the agents of the state government as well as those against the sovereign state itself, for the state can act only through its officers and agents. *Antinerella* v. *Rioux,* 229 Conn.

479, 487, 642 A.2d 699 (1994); *White* v. *Burns,* 213 Conn. 307, 312, 567 A.2d 1195 (1990); *Doe* v. *Heintz,* supra, 204 Conn. 31.

The modern purpose of the sovereign immunity doctrine rests not on arguably ancient and outdated concepts, but, rather, on the purpose of preventing serious interference with governmental functions and the imposition of enormous fiscal burdens on the state by subjecting its government to private litigation. *Fetterman* v. *University of Connecticut,* 192 Conn. 539, 552, 473 A.2d 1176 (1984); *Horton* v. *Meskill,* supra, 172 Conn. 624. The bar of actions against the state is not absolute, however, and has been modified by both statutes and judicial decisions. *Antinerella* v. *Rioux,* supra, 229 Conn. 487. For example, unconstitutional or unauthorized acts of the state are not protected by the doctrine of sovereign immunity. *Fetterman* v. *University of Connecticut,* supra, 552; *Horton* v. *Meskill,* supra, 624. The state may also consent to be sued in certain cases by appropriate legislation waiving its sovereign immunity. *White* v. *Burns,* supra, 213 Conn. 312; *Connecticut State Employees Assn.* v. *Dept. of Administrative Services,* 20 Conn. App. 676, 678, 569 A.2d 1152, cert. denied, 214 Conn. 809, 573 A.2d 320 (1990). In the case of statutory waiver of sovereign immunity, "statutes in derogation of the state's immunity from suit should be strictly construed so that the state's sovereignty may not be undermined." *Sagamore Group, Inc.* v. *Commissioner of Transportation,* 29 Conn. App. 292, 300, 614 A.2d 1255 (1992), quoting *DeFonce Construction Corp.* v. *State,* 198 Conn. 185, 188, 501 A.2d 745 (1985); see also *Lacasse* v. *Burns,* 214 Conn. 464, 468, 572 A.2d 357 (1990). A clear intent to waive sovereign immunity must be disclosed by "the use of express terms or by force of a necessary implication." (Internal quotation marks omitted.) *Struckman* v. *Burns,* 205 Conn. 542, 558, 534 A.2d 888 (1987). Absent such a clear

intent, the doctrine of sovereign immunity implicates the subject matter jurisdiction of the trial court and is a basis for granting a motion to dismiss a suit against the state. *Amore* v. *Frankel*, 228 Conn. 358, 364, 636 A.2d 786 (1994); see also *Berger, Lehman Associates, Inc.* v. *State,* 178 Conn. 352, 358, 422 A.2d 268 (1979).

Neither the legislature nor the appellate courts of this state have specifically addressed the question of whether the state may be served with a property execution on lottery winnings. Indeed, we must look back over 150 years, to the case of *Stillman* v. *Isham,* supra, 11 Conn. 124, to find the last appellate level decision in this state on the subject of garnishment of funds held for another by a public officer.

In *Stillman,* the defendant, a state's attorney, in his official capacity had sued for and received the value of an alleged arsonist's forfeited bail bond. The General Assembly had meanwhile passed a resolution that this money should be paid over to the arsonist's victim, whose store had been damaged in the fire. As soon as the defendant received the money due on the bond, but before he had paid it to the victim, however, a creditor of the victim attempted to attach that sum by serving process on the defendant. The court decided that, although the statute permitting foreign attachment was designed to prevent the fraudulent concealment of property, and should thus be construed liberally, a public officer who is bound to transact the public business should not be susceptible to "the expense, the inconvenience and hazard incident" to the process of foreign attachment. Id., 127. The court further stated: "It is apparent, that if this process is allowed, it must destroy the simplicity of the mode of accounting. Instead of the receipt of the person who is entitled to the money, the officer must produce . . . and verify the process under which it was paid. He must then run the risk of any mistaken opinion as to its legality, or

await the slow proceedings of judicial decisions. He may have to meet and decide upon conflicting claims of creditors as to their priority; and may be called to appear in remote parts of the state, to the injury of the public business, with some expense and great inconvenience to himself. These objections exist in the case of all public officers, whether they are loan officers, county treasurers, administrators or state's attorneys." Id. The court thus held that sovereign immunity prevented the plaintiff from using the process of foreign attachment to obtain funds due a judgment debtor held by a public official in his official capacity as state's attorney.

The plaintiff argues that a property execution on a state agency is not the "institution of suit," and thus is not barred by the doctrine of sovereign immunity. *Stillman,* however, has defined the doctrine of sovereign immunity in Connecticut as encompassing attachments served on an officer of the state, and does not limit the application of the doctrine of sovereign immunity to suits against the state involving the state's direct pecuniary interest in the outcome. Although subsequent decisions have further defined and modified the doctrine of sovereign immunity, neither the substance of nor the basic reasoning behind the *Stillman* holding has been abrogated by the appellate courts of this state. The practical implications of abolishing sovereign immunity as a defense to garnishment still exist.

The number of potential judgment debtors whose funds may be held by the state is immense. There are thousands of state vendors who may be putative judgment debtors and many lesser winners of the state lottery, as well as potential weekly winners of it, and potential daily winners of the various gaming prizes established by the state, each of whom may be a judgment debtor. Until such time as the legislature grants judgment creditors the right to reach such sums held by the state for such winners and vendors, the courts

should continue to apply the doctrine of sovereign immunity.[2] General Statutes §§ 52-350e and 52-350f do not explicitly permit a property execution pursuant to a money judgment to be served on the state or enforced against property of the judgment debtor in possession of the state. The construction of a statute in derogation of the doctrine of sovereign immunity must be strict and when, as here, the statute is silent as to the abrogation of the doctrine, we hold that the doctrine prevents the plaintiff from garnishing the lottery winnings of the defendant while they are in the possession of the state. See *White* v. *Burns,* supra, 213 Conn. 312.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] In 1981, § 12-561-13 (b) of the Regulations of Connecticut State Agencies provided in part that "no right of any person to a prize drawn shall be assignable . . . except that any person pursuant to an appropriate judicial order may be paid the prize to which the winner is entitled." That regulation has been repealed and replaced with § 12-568-5 (d), which provides only that "[a] prize to which a purchaser may become entitled shall not be assignable." Thus, the garnishment of lottery winnings arguably may have been contemplated prior to the revision, but the deletion of the language in the regulation makes it apparent that such is no longer true.

The legislature has, when it has chosen to do so, abrogated the doctrine of sovereign immunity, as for example, by providing, in General Statutes § 52-361a (g), for service of wage executions upon the state.

[3] The plaintiff also claims that the agents of the state acted unconstitutionally by refusing to enforce the plaintiff's property execution and that the state denied the plaintiff due process and equal protection under the United States constitution by refusing to enforce the property execution. The record is insufficient to review these claims and the trial court did not consider them. See *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989). We decline to discuss them further.