## MOEY SEGAL *v.* LEONOR MIDVIDY SEGAL
## (AC 24661)

## LEONOR MIDVIDY SEGAL *v.* MOEY SEGAL ET AL.
## (AC 22567)

Foti, Bishop and Peters, Js.

Argued September 21—officially released December 28, 2004

*William C. Franklin*, for the appellant in the first case (plaintiff Moey Segal).

*Brian McCormick*, with whom, on the brief, was *James J. Bonsignore*, for the appellee in the first case (defendant Leonor Midvidy Segal).

*Gwen P. Weisberg*, with whom, on the brief, was *Julie A. Morgan*, for the appellant in the second case (plaintiff Leonor Midvidy Segal).

*Philip Miller*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan Quinn Cobb*, assistant attorney general, for the appellee in the second case (defendant Brian J. Murphy).

*Opinion*

PETERS, J. These cases involve the enforceability of a Nevada District Court judgment that has been domesticated in this state by a filing that complies with the

Uniform Enforcement of Foreign Judgments Act, General Statutes §§ 52-604 et seq.[1] The judgment debtor has raised three issues. He maintains that enforcement of this judgment in this state is improper because (1) the foreign judgment has been modified in the foreign jurisdiction, (2) the foreign judgment creditor seeks funds arising out of a partition action without first having obtained a postjudgment lien on the partition property and (3) he has been foreclosed from raising substantive defenses to the foreign judgment. The trial court, resolving each of these issues in favor of the judgment creditor, rendered a judgment in her favor. We affirm that judgment.

The parties to this dispute are not newcomers to our judicial system. In *Segal* v. *Segal*, 264 Conn. 498, 823 A.2d 1208 (2003), our Supreme Court reviewed the merits of a partition action brought by the plaintiff, Moey Segal (a.k.a. Moses Segal) (former husband) against the defendant, Leonor Midvidy Segal (former wife). It held that the former wife, who had properly domesticated a foreign judgment in this state, could enforce that judgment, even though the foreign judgment was then on appeal, because the former husband had not filed the security bond required by General Statutes § 52-606

---

[1] General Statutes § 52-605 provides in relevant part: "(a) A judgment creditor shall file, with a certified copy of a foreign judgment, in the court in which enforcement of such judgment is sought, a certification that the judgment was not obtained by default in appearance or by confession of judgment, that it is unsatisfied in whole or in part, the amount remaining unpaid and that the enforcement of such judgment has not been stayed and setting forth the name and last-known address of the judgment debtor.

\* \* \*

"(c) Within thirty days after the filing of the judgment and the certificate, the judgment creditor shall mail notice of filing of the foreign judgment by registered or certified mail, return receipt requested, to the judgment debtor at such judgment debtor's last-known address. The proceeds of an execution shall not be distributed to the judgment creditor earlier than thirty days after filing of proof of service with the clerk of the court in which enforcement of such judgment is sought."

(a)[2] and Nev. R. Civ. P. 62.[3] *Segal* v. *Segal,* supra, 506–507.

Following the remand ordered by our Supreme Court, the parties pursued two separate causes of action. In a continuation of the partition action filed by the former husband on August 18, 1995, he raised new defenses to the enforcement of the Nevada judgment. The trial court, *Brunetti, J.,* rejected these defenses and concluded that the Nevada judgment entitled the former wife to all of the proceeds of the partition sale. The former husband has appealed (AC 24661). In a continuation of an independent interpleader action filed by the former wife on May 11, 2001, she sought a court order directing the court clerk, as custodian of the partition proceeds, to pay these proceeds to her. The trial court, *Cremins, J.,* concluded that, because of sovereign immunity, it lacked subject matter jurisdiction to entertain an interpleader action against a court clerk. The former wife has appealed (AC 22567).

Although these cases were not consolidated, either at trial or in this court, we address them jointly in

---

[2] General Statutes § 52-606 (a) provides in relevant part: "If the judgment debtor shows the court that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the state in which it was rendered. . . ."

[3] Rule 62 of the Nevada Rules of Civil Procedure provides in relevant part: "(a) Stay Upon Entry of Judgment. Execution or other proceedings to enforce a judgment may issue immediately upon the entry of the judgment, unless the court in its discretion and on such conditions for the security of the adverse party as are proper, otherwise directs.
* * *
"(d) Stay Upon Appeal. When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay. The bond may be given at or after the time of filing the notice of appeal. The stay is effective when the supersedeas bond is filed. . . ."

this opinion. At oral argument in this court, the parties agreed that, if we affirm the judgment in the partition action (AC 24661), the interpleader action (AC 22567) would become moot.

Accordingly, we begin our analysis of the parties' claims by addressing the merits of the former husband's contention that Judge Brunetti improperly awarded all of the proceeds of the partition sale to the former wife. In his appeal, the former husband renews the three issues that, in his view, were decided improperly by the trial court. In his first argument, he maintains that the domesticated Nevada judgment became unenforceable as a result of the judgment of the Nevada Supreme Court modifying the domesticated judgment of its trial court. His second argument is that the domesticated Nevada judgment was not enforceable directly in a partition proceeding in this state without a postjudgment lien on the partition property. Finally, in his third argument, he contends that the domesticated judgment was not enforceable because he had been deprived of an opportunity to be heard on his defenses to that judgment. We disagree with each of these claims.

Each of the issues raised by the former husband involves a question of law. Our review of their merits, therefore, is plenary. *Grabowski* v. *Bristol*, 64 Conn. App. 448, 452, 780 A.2d 953 (2001).

I

MODIFICATION OF THE NEVADA JUDGMENT

The facts with respect to the domesticated Nevada judgment and the Connecticut partition action are undisputed. Because the interaction between these two judicial proceedings is complex and intertwined, we start out with a detailed description of their history.

The former spouses, during their marriage, acquired the property in Goshen that is the subject of the parti-

tion action. In 1988, the Nevada District Court dissolved their marriage. The dissolution decree enforced two postnuptial agreements in which the former husband obligated himself to pay alimony to the former wife and to pay all taxes, utilities and general maintenance fees on the jointly owned property in Goshen.

In 1992, the former husband stopped making these payments, allegedly because of a custody dispute. In response, the former wife brought an action in Nevada to obtain the alimony to which she allegedly was entitled. On August 7, 1998, the Nevada District Court rendered a two part judgment in her favor. It awarded her $2.7 million in alimony arrearages. It also ordered the former husband to provide security for the payment of this judgment by way of a trust fund or an annuity. On September 16, 1998, promptly after the rendition of the judgment of the Nevada District Court, the former wife domesticated the judgment of the District Court in this state in accordance with the provisions of the Uniform Enforcement of Foreign Judgments Act, General Statutes §§ 52-604 et seq.

On August 18, 1995, during the pendency of the Nevada litigation, the former husband brought the present action in this state for partition of the Goshen property. At his request, trial of the partition action was postponed until July 27, 1998. On September 15, 1998, the trial court, *DiPentima, J.*, rendered judgment for partition of the Goshen property by an auction to be held on October 31, 1998. This judgment was rendered one day before the former wife's domestication of her Nevada judgment.

Also on September 16, 1998, the former wife filed a judgment lien on the Goshen property in order to enforce her domesticated judgment. She filed a notice of the lien on October 16, 1998. The former husband

objected to the filing of this lien,[4] and Judge DiPentima ordered its immediate release. In the court's view, enforcing the judgment lien would have required the opening of the judgment of sale and the scheduling of a new sale date.

In the court's subsequent distribution of the proceeds of the partition sale, Judge DiPentima awarded the former husband $159,422.58 and the former wife $336,988.96. The court based this uneven distribution on the fact that the former wife had been obligated to pay maintenance costs and taxes on the Goshen property. The postnuptial agreements had assigned this responsibility to the former husband. For two reasons, however, the court declined to enforce the Nevada judgment as a legitimate claim to all of the proceeds. It concluded that enforcing the domesticated Nevada judgment would be premature because the judgment was then on appeal to the Nevada Supreme Court and that it would be burdensome because the parties continued to disagree about the proper disposition of their assets after the dissolution of their marriage.

Both spouses appealed from the judgment of the trial court. This court, unaware of the August 9, 2001 decision of the Nevada Supreme Court, affirmed the judgment of the trial court. *Segal* v. *Segal,* 65 Conn. App. 17, 25, 781 A.2d 492 (2001). The Nevada Supreme Court reversed the order of its District Court with respect to the posting of security, but it affirmed the monetary judgment in favor of the former wife.[5]

---

[4] The basis for the former husband's objection was his allegation that the former wife had filed the judgment lien for the sole purpose of dissuading potential buyers from bidding against her at the partition sale. Judge DiPentima did not agree with this allegation.

[5] The Nevada Supreme Court noted that the former wife's claim was based on the alleged breach of the parties' postnuptial agreements. Those agreements did not require the former husband to provide security in the event of his failure to comply with their terms.

Our Supreme Court reversed the decision of this court. *Segal* v. *Segal,* supra, 264 Conn. 509. The court held that the domestication of the Nevada judgment was effective even though it had been appealed.[6] The court's conclusion was based on the fact that, in violation of § 52-606 (a), the former husband had failed to file a surety bond pending the outcome of his appeal to the Nevada Supreme Court. Id., 506–507. Although informed of the judgment of the Nevada Supreme Court,[7] our Supreme Court remanded the case for further proceedings. Id., 509.

At the remand proceedings before Judge Brunetti, that court considered the merits of the argument of the former husband that the statutes concerning foreign judgments require further filing of a foreign judgment whenever that judgment has been modified in the foreign state. In light of the fact that the Nevada Supreme Court expressly had affirmed the monetary award in favor of the former wife, the court held that the former wife's domestication of the Nevada judgment continued to be effective.

In this appeal, the former husband reiterates his claim that the judgment of the Nevada Supreme Court required further domestication of the judgment of the Nevada District Court in this state. At this juncture, he cannot and does not deny that the judgment of the Nevada District Court initially had been properly domesticated in this state because initially it had been filed in accordance with the requirements of General

[6] The court granted the former wife's petition for certification although it denied the petition for certification filed by the former husband. *Segal* v. *Segal,* 258 Conn. 927, 783 A.2d 1030 (2001).

[7] The court disagreed with the former husband that the judgment of the Nevada Supreme Court had made the case moot. *Segal* v. *Segal,* supra, 264 Conn. 505. As far as the record shows, the former husband did not, at that time, claim that the judgment of the Nevada Supreme Court required further action by the former wife to validate the domesticated judgment of the Nevada District Court.

Statutes § 52-605.[8] Nonetheless, in his view, the judgment of the Nevada Supreme Court required his former wife to do more than file the affidavit that she submitted on September 10, 2003. The affidavit stated that the judgment rendered by the Nevada District Court had not been reduced, vacated or stayed. The affidavit was accompanied by a certified copy of the decision of the Nevada Supreme Court. According to the former husband, his former wife also was required to file an affidavit attaching a certified copy of a decision of the Nevada *District* Court implementing the judgment of the Nevada *Supreme* Court.

For two reasons, we find this claim of the former husband to be unpersuasive. The first relates, as a matter of fact, to the nature of the Nevada proceedings. The second relates to the authority of Connecticut courts, as a matter of law, to enforce domesticated foreign judgments that have been modified, in part, by the foreign jurisdiction.

The former husband's procedural argument relies on an assumption that the record does not sustain. He has not provided any authority for the proposition that Nevada law required the Nevada District Court, under the circumstances of this case, to take any further action to enforce the judgment of its Supreme Court. It appears that he would require his former wife to file a document that, as far as the record shows, does not exist. To state this proposition is to refute it.

The former husband's second argument is that, as a matter of law, *any* modification of a domesticated judgment of a foreign court requires the foreign judgment creditor to take further steps, such as further notice to the judgment debtor, to permit the domesticated judgment to remain in effect. Without citing any case law, he relies on the text of § 52-605, which

[8] See footnote 1.

describes the procedural requirements for the domestication of a foreign judgment. He does not, however, point to any language in this statute that addresses modifications of the domesticated judgment. He maintains, nonetheless, that, under § 52-605 (c), he was at least entitled to thirty days written notice of the affidavit filed by the former wife. The trial before Judge DiPentima proceeded before the expiration of this time period. Like any other argument about compliance with a notice requirement, at best, the former husband's claim is a challenge to the trial court's personal jurisdiction to adjudicate his rights. In the absence of a timely motion to dismiss at trial, he cannot raise this issue on appeal. *Kim* v. *Magnotta*, 249 Conn. 94, 102, 733 A.2d 809 (1999).

Even if we were to address the merits of the former husband's claim, he could not succeed. The former husband cites neither statutory nor case law in support of his contention that the statutes concerning foreign judgments preclude the enforcement of a properly domesticated foreign judgment after modification of the foreign judgment. Connecticut case law is not so barren. Our Supreme Court has held that "[a] domestic judgment enforcing a foreign judgment is not directly affected by subsequent proceedings in the originating state." *Burchett* v. *Roncari*, 181 Conn. 125, 129, 434 A.2d 941 (1980); see also *Bank of North America* v. *Wheeler*, 28 Conn. 433, 441 (1859). With respect to this issue, *Burchett* continues to be the controlling authority.

Case law in other jurisdictions supports the conclusion that the modification of a domesticated foreign judgment does not automatically require refiling in the domestication state. These courts have held that they *may* refuse to enforce a foreign judgment as long as the judgment remains subject to modification by the original court. See *Rash* v. *Rash*, 173 F.3d 1376, 1380–81

(11th Cir. 1999) (involving default order pendente lite with issue of jurisdiction to be determined in later plenary hearing), cert. denied, 528 U.S. 1077, 120 S. Ct. 793, 145 L. Ed. 2d 669 (2000); see also *Stephens* v. *Walker*, 743 F. Sup. 670, 675 (W.D. Ark. 1990); *Matson* v. *Matson*, 310 N.W.2d 502, 505 (Minn. 1981), on appeal after remand, 333 N.W.2d 862 (Minn. 1983); *Nagy* v. *Wood*, 95 App. Div. 2d 728, 729, 464 N.Y.S.2d 138, appeal dismissed, 60 N.Y.2d 701 (1983); *Greenhouse* v. *Hargrave*, 509 P.2d 1360, 1362 (Okla. 1973). The former husband has not cited any case law to the contrary.

A recent Ohio case is directly on point. In *Appel* v. *Berger*, 149 Ohio App. 3d 486, 778 N.E.2d 59 (2002), appeal denied, 98 Ohio St. 3d 1424, 782 N.E.2d 78 (2003), after domestication of a Nevada judgment in Ohio, a Nevada court issued an amended default judgment that changed the *amount of damages* previously awarded but not the underlying finding of *liability*. Id., 492. The Ohio court held that, because the amended judgment had not rendered the prior judgment void, refiling of the foreign judgment in Ohio was not required. Id., 493. It relied on the fact that the Nevada court had referred to the new judgment as an "amended judgment." Id. In the view of the Ohio court, if the Nevada court had deemed the previous judgment to be void, it could not and would not have amended its terms. The Ohio court concluded that "[t]he mere modification of the amount of the foreign judgment does not give rise to an obligation to repeat the domestication requirements set forth in [the Ohio statute governing the enforcement of foreign judgments]." Id.

The reasoning of the Ohio court in *Appel* is persuasive. The law of the state in which a foreign judgment is domesticated controls the decision about the effect of a modification of the foreign judgment by the foreign court. Accordingly, Connecticut law determines whether the modification in this case is so substantial

that it precludes the enforcement of the previously domesticated judgment of the Nevada District Court. See *Burchett* v. *Roncari*, supra, 181 Conn. 125.

Under the circumstances of this case, we agree, therefore, with the conclusion of Judge Brunetti that the modification of the District Court judgment by the Nevada Supreme Court did not require further domestication here. The court properly concluded that "[t]he foreign judgment was filed properly and is enforceable in accordance with the Connecticut Supreme Court ruling."

II

ENFORCEMENT OF THE NEVADA JUDGMENT IN A CONNECTICUT PARTITION ACTION

The former husband's second argument focuses on the manner in which the former wife was permitted to enforce her domesticated judgment for $2.7 million. In his view, the trial court improperly awarded her the proceeds of the partition sale in partial payment of the Nevada judgment because (1) she had not obtained a lien on the property by way of a postjudgment remedy, (2) an order directing the town clerk to pay the proceeds to his former wife was, in effect, an improper garnishment of funds in the hands of a public official and (3) the order improperly deprived him of the opportunity to be heard on substantive defenses to the enforcement of the judgment. Judge Brunetti rejected these contentions. We agree with the court.

A

The trial court awarded the partition proceeds to the former wife in the exercise of the equitable discretion conferred upon it by General Statutes §§ 52-495 and 52-

502.[9] These statutes authorize a court, in exercising its equitable powers, to partition and order the sale of real property owned by joint tenants or tenants in common. Concededly, the former wife was a necessary party to the partition action because she was a joint owner of the property. Her domesticated judgment remained unpaid. Relying on these facts, the court awarded all of the proceeds to the former wife. The former husband has appealed.

A partition action is equitable in nature. Accordingly, "[t]he determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *Sclafani* v. *Dweck*, 85 Conn. App. 151,

---

[9] General Statutes § 52-495 provides: "Courts having jurisdiction of actions for equitable relief may, upon the complaint of any person interested, order partition of any real property held in joint tenancy, tenancy in common, coparcenary or by tenants in tail. The court may appoint a committee to partition any such property. Any decrees partitioning entailed estates shall bind the parties and all persons who thereafter claim title to the property as heirs of their bodies."

General Statutes § 52-502 provides: "(a) On any complaint for the sale of real or personal property, the court in which the case is pending may make any order necessary to protect the rights of all parties in interest and to carry the sale into effect.

"(b) On any such complaint, the court may appoint a committee to make the sale, who shall pay into court the proceeds therefrom. The proceeds from the sale, after deducting such reasonable costs and expenses as the court directs, shall be distributed by order of court among all persons interested in the property, in proportion to their interests.

"(c) If the names or residences of any of the parties entitled to share in the fund are unknown to the court and cannot be ascertained, it shall make such order relative to the custody or investment of the share of the unknown parties as it deems reasonable."

155, 856 A.2d 487, cert. denied, 271 Conn. 944, 861 A.2d 1177 (2004); see *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981) (observing that determination of what equity requires in given case is matter for discretion of trial court).

General Statutes § 52-502 (b) provides in relevant part that the proceeds of a partition sale "shall be distributed by order of court among *all persons interested* in the property, in proportion to their interests." (Emphasis added.) Relying on this statute, the trial court held that, because the partition proceeds already were in the custody of the court, the former wife had no further obligation to bring a postjudgment action to enforce her domesticated judgment. From that vantage point, § 52-380a,[10] the postjudgment lien statute, is irrelevant.

The former husband argues, however, that § 52-380a is not irrelevant because, under § 52-605 (b),[11] a foreign judgment "is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of this state and may be enforced or satisfied in like manner." General Statutes § 52-605 (b). In his view, even a domestic judgment would not be enforceable, in a partition action, merely by exhibiting the judgment to the partition judge, and the same

---

[10] General Statutes § 52-380a provides in relevant part: "(a) A judgment lien, securing the unpaid amount of any money judgment, including interest and costs, may be placed on any real property by recording, in the town clerk's office in the town where the real property lies, a judgment lien certificate . . . .

"(b) From the time of the recording of the judgment lien certificate, the money judgment shall be a lien on the judgment debtor's interest in the real property described. . . .

"(c) A judgment lien on real property may be foreclosed or redeemed in the same manner as mortgages on the same property. . . ."

[11] General Statutes § 52-605 (b) provides: "Such foreign judgment shall be treated in the same manner as a judgment of a court of this state. A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a court of this state and may be enforced or satisfied in like manner."

rule should govern enforcement of a foreign judgment. Furthermore, if § 52-380a applies, he would, he argues, be able to raise defenses afforded to him by the post-judgment lien statute.

The former wife maintains, to the contrary, that the trial court properly characterized all of her claims as those of a party in interest in the partition property. She was a partial owner of the property, a user of the property and a primary caretaker of the property. Cf. *Varley* v. *Varley*, 189 Conn. 490, 503, 457 A.2d 1065 (1983) (court distributing proceeds of committee sale of property may, in exercise of its equitable discretion, consider party's connections to property). In her view, the trial court had equitable authority to consider all of her claims against her former husband and did not abuse its discretion to rule as it did.

There is virtually no Connecticut case law on the relationship between an unpaid judgment and the authority of a trial court in an equitable action, such as a partition proceeding, to enforce such a judgment. It is true that, in *Burchett* v. *Roncari*, supra, 181 Conn. 125, our Supreme Court permitted a foreign judgment creditor, having domesticated his judgment here, to file a creditor's bill[12] to garnish funds that a third party owed to the judgment creditor. The court did not consider whether, without such an order, the judgment creditor could have proceeded directly against the third party. It merely noted that the judgment of the foreign creditor had "limited collectibility" because such a creditor did not then have the right to file a garnishment action. Id.,

---

[12] A creditor's bill is an equitable remedy that is based on a judgment at law. See *Burchett* v. *Roncari*, supra, 181 Conn. 127–28. The court cited *Greenwich Trust Co.* v. *Tyson*, 129 Conn. 211, 226, 27 A.2d 166 (1942), for the proposition that a foreign judgment creditor may file a creditor's bill without first having filed a garnishment action.

129; see General Statutes (Rev. to 1981) § 49-44.[13] Since the decision in *Burchett*, however, our legislature has enacted § 52-380a, which permits *any* judgment creditor, including a foreign judgment creditor, to place a lien on the property of a judgment debtor.[14] *Burchett* is, therefore, of historical interest but does not give guidance on the enforcement of domesticated foreign judgments.

Like the parties, we have found no precedents, either in this state or in other states, that have addressed the enforcement issue in this case. A Texas case, *Citicorp Real Estate Inc.* v. *Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 930 (Tex. App.), writ denied (July 13, 1988), held that a foreign judgment creditor could not enforce a judgment lien without complying with local statutory filing requirements, but that case did not involve an equitable proceeding such as the present partition action.

Potentially, this case raises a novel issue of public policy. In light of the undisputed facts in this case, however, we believe it prudent to postpone resolution of the issue until another day. The record establishes that, although the former wife properly domesticated her Nevada judgment,[15] she never had an opportunity to obtain an enforceable judgment lien on the partition property. The problem lies in the timing of the various proceedings.

---

[13] General Statutes (Rev. to 1981) § 49-44 provides in relevant part: "Any suitor having an unsatisfied judgment, obtained in any court *of this state* or of the United States *within this state,* may cause to be recorded, in the town clerk's office in the town where the land lies, a certificate signed by the judgment creditor, his attorney or personal representative. . . . Such judgment, from the time of filing such certificate, shall constitute a lien upon the real estate described in such certificate . . . ." (Emphasis added.)

[14] See footnote 10.

[15] The former husband has not argued that his former wife unreasonably delayed the domestication of the Nevada judgment. Judge Brunetti therefore made no such finding.

The earliest date on which the former wife could have filed a judgment lien was September 16, 1998, when she domesticated the August 7, 1998 judgment of the Nevada District Court. In fact, she did so.[16] Even on that date, it was already too late. On the previous day, September 15, 1998, Judge DiPentima had rendered the judgment approving the partition of the property by sale and setting the date for the auction. For that reason, the court properly ordered the former wife to file a release of the judgment lien that she actually filed on October 16, 1998.

The record contains no explanation for this curious juxtaposition of related events. The briefs of the parties do not address the issue. Although the former husband, on July 17, 1998, had asked for, and had received, a postponement of the partition proceedings, the former wife apparently never made a similar request. If ever there was a case crying out for the use of equitable discretion, it is this one.

We are persuaded, therefore, that on the record before him, Judge Brunetti did not abuse his § 52-502 discretion by taking a broad view of the interests to be considered in the distribution of the proceeds of the partition sale.[17] As a joint owner, the former wife had an unassailable interest in the partition property. The judgment that she sought to enforce was not entirely unrelated to the partition property because it was based on the former husband's refusal to comply with their postnuptial agreements, which included provisions

---

[16] The former wife represents, in her brief, that she filed a judgment lien concurrently with her filing of the Nevada judgment. The former husband has not challenged the accuracy of this representation.

[17] We recognize that the trial court did not base its decision on the circumstances that we have found to be significant. The record is, however, incontrovertible. Our courts have long held that if a trial court reaches a correct decision on questionable grounds, we may sustain the court's action if proper grounds exist to support it. See, e.g., *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978).

about the maintenance of this property. It was not feasible for her to obtain a judgment lien on this property. Under these circumstances, the court properly enforced the former wife's domesticated judgment in the distribution of the partition proceeds.

## B

The former husband alternatively maintains that, as a matter of public policy, the judgment of the trial court directing the payment of the partition proceeds to the former wife should be set aside because, in effect, the judgment was an order garnishing funds in the hands of a public official. The doctrine of sovereign immunity protects a public official from a garnishment order. Concededly, a court clerk is a public official. The trial court, nonetheless, held that, because the clerk held the partition proceeds as the result of the court's direct order, the clerk had no right to refuse to pay the proceeds in accordance with the court's judgment. We agree.

It is undisputed that, at least since *Stillman* v. *Isham*, 11 Conn. 124 (1835), our courts have held that the doctrine of sovereign immunity bars suits against the agents of a sovereign state. See also *Herzig* v. *Horrigan*, 34 Conn. App. 816, 818, 644 A.2d 360 (1994). It is equally undisputed that the trial court's judgment ordered the court clerk, the depositary of the partition proceeds, to pay all of the net partition proceeds to the former wife.

The question, therefore, is whether the doctrine of sovereign immunity bars an order of a court to a court clerk to distribute partition proceeds deposited with the clerk pursuant to § 52-502 (b). Specifically, the question is whether such an order is a writ of garnishment against the court clerk.

"The modern purpose of the sovereign immunity doctrine rests not on arguably ancient and outdated con-

cepts, but, rather, on the purpose of preventing serious interference with governmental functions and the imposition of enormous fiscal burdens on the state by subjecting its government to private litigation. . . . The bar of actions against the state is not absolute, however, and has been modified by both statutes and judicial decisions. . . . For example, unconstitutional or unauthorized acts of the state are not protected by the doctrine of sovereign immunity. . . . The state may also consent to be sued in certain cases by appropriate legislation waiving its sovereign immunity. . . . Absent . . . a clear intent [to waive immunity], the doctrine of sovereign immunity implicates the subject matter jurisdiction of the trial court and is a basis for granting a motion to dismiss a suit against the state." (Citations omitted.) *Herzig* v. *Horrigan*, supra, 34 Conn. App. 819–20.

The issue in *Herzig*, supra, was whether, by serving a writ of garnishment on state officers,[18] a judgment creditor might obtain access to his debtor's lottery winnings. Without directly challenging the doctrine of sovereign immunity, the judgment creditor sought to distinguish his case from existing precedents by emphasizing that he had not instituted a suit of any kind against the state and was not trying to reach funds in which the state had a pecuniary interest.

In *Herzig*, this court rejected these arguments. Focusing on the practical implications of denying sovereign immunity as a defense to garnishment, we noted that the number of potential judgment debtors whose funds may be held by the state is immense. "There are thou-

---

[18] The plaintiff in *Herzig* had served a writ of garnishment on the state lottery director, the executive director of the division of special revenue, the state deputy treasurer, one of the associate attorneys general and an officer of the office of the state comptroller. *Herzig* v. *Horrigan*, supra, 34 Conn. App. 817–18. He did not dispute that these defendants were state officers. Id.

sands of state vendors who may be putative judgment debtors and many lesser winners of the state lottery, as well as potential weekly winners of it, and potential daily winners of the various gaming prizes established by the state, each of whom may be a judgment debtor." Id., 821. In light of these realities, we held that the *Herzig* trial court lacked subject matter jurisdiction to enforce the plaintiff's writ of garnishment.

Although *Herzig* and this case both involve garnishments, their similarity ends there. In this case, the court clerk came into possession of the partition proceeds as a direct result of a court order enforcing the judgment of the court in a partition action pursuant to § 52-502 (b). There is only one disbursement to be made by only one clerk, Brian J. Murphy. The former husband has not presented any factual basis for concern that a one-time payment of the fund will cause the clerk any administrative difficulty. Indeed, in the companion case, (AC 22567), Judge Cremins concluded that the clerk in this case was "not an interested party. . . . He merely holds the funds for the court with no claim to or interest in them."

Under the circumstances of this case, Judge Brunetti's order was not a garnishment order. The partition statute, § 52-502 (b), conferred authority on the court to order a court clerk to disburse the proceeds of the partition proceedings to the former wife.

C

The former husband further maintains that the trial court improperly enforced the domesticated Nevada judgment because, in so doing, the court deprived him of the opportunity to raise his substantive defenses to the Nevada judgment.[19] In the earlier stages of this

___

[19] To the extent that the former husband argues that the judgment of the trial court deprived him of defenses intrinsic to postjudgment proceedings, we lack a record on which to act. Judge DiPentima did not address this issue either in her original memorandum of decision or in her subsequent articulation of her decision.

proceeding, Judge DiPentima declined to hear these defenses because, in her view, it would have been burdensome for the court to consider, in a partition action, the merits of the parties' numerous equitable claims arising out of "an extended tortuous multistate postdissolution saga." The former husband disagrees with this decision. We agree with Judge DiPentima, but for a different reason.

The former husband's argument has two parts. He maintains that his former wife cannot enforce the domesticated Nevada judgment without affording him the opportunity (1) to obtain an offset to the judgment to which he would have been entitled if his former wife had obtained a postjudgment lien and (2) to raise substantive defenses to the validity of the judgment of the Nevada District Court. We disagree.

The former husband's first claim is closely related to his argument that his former wife could not access the partition sale proceeds directly but was required to pursue a postjudgment remedy. We need not repeat here the grounds for our previous conclusion that Judge Brunetti properly held that, under the circumstances of this case, the former wife did not have to obtain a postjudgment lien on funds that were already under the care and custody of the court.

The former husband's second claim is that § 52-605 (b) permits him to raise substantive defenses to a domesticated judgment. He claims that the domesticated judgment is voidable because his former wife continues (1) to seek a recovery greater than that awarded to her by the Nevada District Court[20] and (2) to deprive him of custody of their child. On the present

---

[20] Although the former wife initially had filed a cross appeal to the Nevada Supreme Court, the former husband concedes that she subsequently withdrew the cross appeal.

record, these claims cannot be sustained because of the absence of any such findings by the trial court.

There is, in addition, an insurmountable legal barrier to the husband's claim. In *Nastro* v. *D'Onofrio*, 76 Conn. App. 814, 821, 822 A.2d 286 (2003), we recognized that, read literally, § 52-605 (b) permits a judgment debtor, such as the former husband, to raise substantive defenses to the continuing validity of a domesticated foreign judgment. We held, however, that the statute could not be read literally because to do so would put the statute into conflict with the full faith and credit clause of the United States constitution.[21] Id., 823–24. As a matter of federal constitutional law, a judgment debtor may challenge the enforcement of a foreign judgment only if the judgment is jurisdictionally flawed because the foreign court lacked subject matter or personal jurisdiction over the defendant or if that jurisdiction resulted from an extrinsic fraud. *Underwriters National Assurance Co.* v. *North Carolina Life & Accident & Health Ins. Guaranty Assn.*, 455 U.S. 691, 704–705 & n.10, 102 S. Ct. 1357, 71 L. Ed. 2d 558 (1982). The foreign judgment may not be impeached because of mistake or fraud or for reasons of public policy. *Baker* v. *General Motors Corp.*, 522 U.S. 222, 232–33, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998); see *Nastro* v. *D'Onofrio*, supra, 818–20.

In this case, the former husband has not alleged any jurisdictional defect in the Nevada judgment that has been domesticated here. A Nevada court is the proper

---

[21] The constitution of the United States, article four, § 1, requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. . . ." Interpretation of the full faith and credit clause is a question of federal law. State courts are bound by the decisions of the United States Supreme Court that prescribe the criteria for applying the clause. *Thomas* v. *Washington Gas Light Co.*, 448 U.S. 261, 271 n.15, 100 S. Ct. 2647, 65 L. Ed. 2d 757 (1980).

forum for his challenges to the continued validity of the Nevada judgment.[22]

In sum, we hold that, under the circumstances here, in an action pursuant to § 52-502 (b) for the equitable partition of the parties' jointly owned property, the trial court properly enforced the domesticated Nevada judgment awarding $2.7 million in damages to the former wife. The court had the discretionary authority to enforce a domesticated judgment without the filing of a judgment lien in a case in which the former wife had attempted, unsuccessfully, to obtain such a lien. The court's order of payment of partition proceeds did not infringe on the clerk's sovereign immunity. The former husband's substantive defenses to the domesticated judgment should be tried in Nevada and not in the courts of this state.

## CONCLUSION

The former husband asks us to reverse the judgment of the trial court enforcing a judgment for $2.7 million in favor of his former wife. The judgment was rendered by the Nevada District Court and domesticated here. Under the circumstances of this case, we conclude, however, that § 52-502 (b) conferred on the trial court the equitable discretion to enforce the domesticated judgment in its distribution of the proceeds of a partition sale. Our legislature's enactment of the Uniform Enforcement of Foreign Judgments Act manifests its policy decision that Connecticut courts should assist in the enforcement of foreign judgments and the collection of just debts.[23] The judgment of the trial court furthers this important policy.

---

[22] A defense of payment would, of course, present a different issue.

[23] "The purpose of the Uniform Enforcement of Foreign Judgments Act is to provide a method by which foreign judgments, that is, judgments rendered in the courts of other states, shall be treated in the same manner as judgments of a court of the State of Connecticut." 16 S. Proc., Pt. 9, 1973 Sess., p. 4049, remarks of Senator George C. Guidera. The prefatory note to the act further states that the act is intended to provide "the enacting

In A.C. 24661, the judgment is affirmed.

In A.C. 22567, the appeal is dismissed as moot.

In this opinion the other judges concurred.

state with a speedy and economical method of doing that which it is required to do by the Constitution of the United States. It also relieves creditors and debtors of the additional cost and harassment of further litigation which would otherwise be incident to the enforcement of a foreign judgment." Uniform Enforcement of Foreign Judgments Act, 13 U.L.A. 157 (2002).