CAROL DICERTO *v.* RONALD N. JONES ET AL.
(AC 28623)

Flynn, C. J., and Beach and Borden, Js.

Argued March 26—officially released June 3, 2008

*Dennis J. Kokenos,* for the appellant (named defendant).

*Leslie Byelas,* with whom, on the brief, was *Sheryle S. Levine,* for the appellee (plaintiff).

*Opinion*

BEACH, J. In this partition action, the defendant Ronald N. Jones[1] appeals from the judgment of the trial

---

[1] Emigrant Mortgage Company, Inc., which held the first mortgage on the subject property, was also a named defendant. The action as to Emigrant Mortgage Company, Inc., was withdrawn on August 3, 2006. We therefore refer in this opinion to Jones as the defendant.

court dividing the net partition proceeds between him and the plaintiff, Carol DiCerto. On appeal, the defendant claims that the court (1) abused its discretion by dividing the net partition proceeds equally between him and the plaintiff after reimbursing him for his initial expenditures without reimbursing him for certain other expenses related to the subject property, and (2) when dividing the net partition proceeds, improperly relied on General Statutes § 46b-81, which governs the division of marital property. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to our resolution of the defendant's appeal. The plaintiff met the defendant in 1987 and thereafter began a dating relationship with him in 1997. The parties lived together at the plaintiff's condominium in 1998 and 1999. In July, 1999, the parties purchased a residence located at 780 Hunting Ridge Road in Easton. The parties jointly owned the subject property with rights of survivorship and paid a total purchase price of $866,076. The defendant contributed a net sum of $47,605.48 to the purchase of the subject property; the plaintiff did not contribute any money.

Subsequent to the purchase of the subject property, the defendant paid all financial charges and payments relating to taxes, insurance and the mortgage until the subject property was sold on December 9, 2005. The defendant also paid associated mortgage refinance costs in the amount of $3276 when the original mortgage of $850,000 with Citibank, F.S.B. (Citibank), was replaced with an $820,000 first mortgage to Emigrant Mortgage Company, Inc. (Emigrant). The reduction in the principal of the original mortgage to Citibank from $850,000 to the new principal amount of $820,000 owed to Emigrant was due solely to the mortgage payments from the defendant's funds. All payments for the

monthly mortgage charges to Emigrant were paid by the defendant.

Additionally, the defendant paid for all improvements to the property between the date of purchase and the time of sale. The defendant made expenditures for fixtures, furnishings, appliances, equipment, improvements and landscaping totaling $94,042.15. The defendant also gave the plaintiff $500 per month as an allowance toward household expenses, some of which the plaintiff used to hire a cleaning person and to pay the telephone and cable television bills.

There was no agreement between the parties, either orally or in writing, as to what would occur regarding the defendant's contributions, including his payments for the purchase of the property, mortgage payments, improvements to the property and the expenses of maintaining the property, if the parties later were to separate. There was, however, an agreement and understanding between the parties during their relationship and prior to separation, that the defendant was to pay for these expenses without reimbursement from the plaintiff. The plaintiff had expressed a concern about her inability to afford any of the expenses on her own.

The plaintiff brought this action by way of a one count complaint dated December 3, 2004, alleging that the parties held the subject property as joint tenants with rights of survivorship, and, as such, each has an undivided 50 percent interest therein. The plaintiff sought a partition of the subject property, with a sale of the premises and a division of the proceeds between the parties according to their respective rights. While this action was pending, the parties sold the subject property for $1,090,000. After closing adjustments and closing costs, which included paying off the Emigrant mortgage in the amount of $825,381.39, the parties received net sale proceeds totaling $192,065.09.[2]

---

[2] The net proceeds from the partition sale were held in escrow.

In its memorandum of decision, the court found that the total amount in escrow, reflecting the net proceeds from the sale of the subject property, was $192,065.09. The court held that the defendant was to be reimbursed for his initial expenditures of $47,605.48 for the purchase of the subject property and awarded half of the remaining proceeds, $72,229.81, to each party. The total awards therefore were $119,835.28 to the defendant and $72,229.81 to the plaintiff. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion when it divided the $192,065.09 in net partition proceeds equally after reimbursing him for his initial expenditures of $47,605.48. Specifically, the defendant claims that the court improperly failed to consider the reductions he made to the principal balance of the loan and the improvements he made to the property without contribution from the plaintiff.[3] We disagree.

We first set forth our standard of review. "A partition action is equitable in nature. Accordingly, [t]he determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the

[3] The defendant also claims that the court used an improper method for dividing the net partition proceeds. Relying on *Vesce* v. *Lee*, 185 Conn. 328, 335, 441 A.2d 556 (1981), *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006), and *Herring* v. *Daniels*, 70 Conn. App. 649, 805 A.2d 718 (2002), the defendant argues that the court improperly awarded each party half of the net partition proceeds after reimbursing him only for his initial expenditures. The defendant's argument is unpersuasive because the equities in partition actions are balanced by trial courts on a case-by-case basis. The fact that other trial courts may have ruled differently in the ultimate division of sale proceeds in a partition action does not require, in itself, a similar result in the present case. "[T]he determination of what equity requires is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Segal* v. *Segal*, 86 Conn. App. 617, 630, 863 A.2d 221 (2004).

trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . . General Statutes § 52-502 (b) provides in relevant part that the proceeds of a partition sale shall be distributed by order of court among all persons interested in the property, in proportion to their interests." (Citations omitted; internal quotation marks omitted.) *Segal* v. *Segal*, 86 Conn. App. 617, 630–31, 863 A.2d 221 (2004).

The defendant contends that the court's division of the net partition proceeds was inconsistent with the evidence before it. He argues that the court improperly divided the proceeds on the basis of an expectancy of marriage and improperly failed to reimburse him for the reduction he made to the mortgage principal and for the improvements to the house for which he paid. The improper nature of the division, he contends, is highlighted by the court's finding that at the time of the purchase of the subject property, the parties intended to keep their finances separate.

When balancing the equities to determine the division of the net partition proceeds, the court emphasized the following relevant facts. The parties, at the time of the purchase of the subject real estate, intended to keep their finances separate, despite their cohabiting relationship. As time passed, however, and as their relationship progressed, the defendant expected that the plaintiff would share equally in the subject property. Although there was no agreement between the parties as to what would occur regarding the defendant's contributions, including payments for the purchase of the property, mortgage payments, improvements to the property and expenses of maintaining the property, if

the parties were later to separate, there was agreement between the parties during their relationship and prior to separation that the defendant was to pay for these expenses without reimbursement from the plaintiff. When the plaintiff voiced her concern regarding her ability to assume the financial obligations of the home, the defendant agreed that he would pay the mortgage and the major expenses of maintaining it. The defendant made no claim for reimbursement until the plaintiff brought this action for partition.

We cannot say that the court abused its discretion when it divided the $192,065.09 in net proceeds equally after reimbursing the defendant for his initial expenditures of $47,605.48. "[I]t is not always true that each tenant in common or joint tenant is entitled to equal shares in the real estate. . . . [T]he trial court may distribute the proceeds of the sale in accordance with the equitable interest of each party." (Citations omitted; internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 610, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006). Although "[c]ohabitation alone does not create any contractual relationship or, unlike marriage, impose other legal duties upon the parties . . . where the parties have established an unmarried, cohabiting relationship, it is the specific conduct of the parties within that relationship that determines their respective rights and obligations . . . ." (Citation omitted; internal quotation marks omitted.) *Herring* v. *Daniels*, 70 Conn. App. 649, 655–56, 805 A.2d 718 (2002). Although the court found, as the defendant observes, that *at the time of the purchase* of the subject property, the parties intended to keep their finances separate despite their cohabiting relationship, it also found that there was an agreement between the parties *during their relationship* that the defendant was to pay for various expenses without

reimbursement from the plaintiff. The court's division of the net partition proceeds is consistent with its findings of fact.

After reviewing the court's memorandum of decision and relevant portions of the record, we conclude that the court did not abuse its discretion in finding the equitable interests of the plaintiff and the defendant as it did. The court thoughtfully and thoroughly considered the pertinent factors, including the credibility of the parties, and reached a determination consistent with the evidence before it.

II

The defendant next claims that the court's division of the net partition proceeds was improper because it relied on § 46b-81[4] in dividing the net partition proceeds. We disagree.

[1] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

Section 46b-81 governs the distribution of assets in dissolution actions. See, e.g., *Bender* v. *Bender*, 258 Conn. 733, 741–42, 785 A.2d 197 (2001); see also General Statutes § 46b-81. We agree with the defendant that § 46b-81 is not applicable in the present case. The court, however, made no mention of the statute. Rather, it cited the proper standard in partition cases, namely, that partition actions require a balancing of the equities. See, e.g., *Segal* v. *Segal*, supra, 86 Conn. App. 630–31 (partition action equitable in nature, determination of what equity requires is matter for discretion of trial court). "Judges are presumed to know the law . . . and to apply it correctly." (Internal quotation marks omitted.) *Fenton* v. *Connecticut Hospital Assn. Workers' Compensation Trust*, 58 Conn. App. 45, 54, 752 A.2d 65, cert. denied, 254 Conn. 911, 759 A.2d 504 (2000). The court applied the appropriate standard, and, therefore, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.