******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ELISE ZEALAND *v.* SCOTT BALBER
## (AC 43650)

Elgo, Cradle and Harper, Js.

*Syllabus*

The plaintiff sought a partition by sale, pursuant to statute (§ 52-500 (a)), of certain real property that she and the defendant had purchased as tenants in common. The parties, who never married, shared a principal residence in New York, where they were employed as attorneys. After the parties had a child together, the plaintiff left her employment to be the child's primary caregiver, after which the defendant was the sole source of support for her and the child. The parties thereafter purchased what they intended to be a country home that would accommodate them and their child as well as the defendant's other children when he had visitation with them. Although both parties were obligors on the note and mortgage, the defendant funded the purchase and carrying costs for the home. The parties made improvements and repairs to the property, many of which the plaintiff managed, and the defendant purchased artwork for the home, including an item referred to as "punching bag art." The trial court found that the plaintiff had a relatively minimal interest in the property as compared to that of the defendant and declined to order a partition sale because a lump sum payment by the defendant to the plaintiff in exchange for her quitclaim to him of her interest in the property would better promote the relative interests of the parties. The court rendered judgment, ordering, inter alia, that the plaintiff quitclaim her interest in the property to the defendant, at which time he was to pay her $25,000 and complete a sale or refinance of the home, or other transaction, that would relieve her of liability under the mortgage note and deed. *Held*:

1. The trial court did not abuse its discretion in determining the parties' respective interests in the property, as it reasonably could have determined, in balancing the equities of the parties, that the plaintiff possessed a relatively minimal interest in the property as compared to that of the defendant: the evidence supported the court's findings that the defendant alone obtained preapproval and a mortgage commitment for the property, that he was the sole source of the money to purchase the property, as well as furnishings, artwork and other artifacts, and to carry the mortgage debt and other property expenses; moreover, the court found that the parties had not reached an agreement as to the property's disposition in the event that they were to part ways, that it was uncontroverted that the defendant paid for the punching bag artwork with his personal funds, and that the plaintiff's testimony that she had no recollection of signing the note and mortgage was incredible, as the court was in a superior position to assess the parties' testimony and to credit the defendant's testimony over that of the plaintiff, as was its exclusive prerogative.

2. The trial court did not abuse its discretion in precluding evidence the plaintiff sought to offer regarding her nonmonetary contributions to the defendant and the children, as it permitted her to present a full day of testimony in narrative form with respect to her care of the children, management of the home, and commitment to the defendant and nonmonetary contributions to his career; moreover, her proffered evidence about a discounted price on the purchase of the punching bag artwork was irrelevant, as it was cumulative of evidence that already had been admitted, and the plaintiff did not show that the preclusion of the testimony was prejudicial to her.

3. The plaintiff's claim that the trial court exceeded its authority under § 52-500 (a) was unavailing, as the evidence substantiated the court's determination that the plaintiff had a minimal interest in the property and that an order requiring its sale would not promote the parties' relative interests; contrary to the plaintiff's assertion that the court's conclusion that a sale was necessary undermined and was inconsistent with its conclusion that a sale would not promote the parties' interests, the court never concluded that a sale was necessary but merely ordered

the defendant to complete a sale, refinance or like transaction so as to absolve the plaintiff of any legal obligation with respect to the existing note and mortgage.

4. The trial court did not abuse its equitable discretion in awarding the plaintiff $25,000 as just compensation pursuant to § 52-500 (a); the court reasonably could have concluded that the plaintiff was not entitled to compensation for the punching bag artwork, as there was uncontroverted evidence that the defendant paid for it with funds from his personal account, which was not shared with the plaintiff, and, although it was beyond dispute that the defendant was the sole source of money to buy the property, make improvements to it and carry the mortgage debt and other property expenses, the court made its award of compensation to the plaintiff in light of her nonmonetary contributions to the property, which included her work with a broker, follow up on matters for mortgage funding, handling of some preclosing inspections and, after the closing, making arrangements for many repairs and purchasing general furnishings.

Argued April 12—officially released June 22, 2021

*Procedural History*

Action for, inter alia, the partition of certain of the parties' real property, and for other relief, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of Stamford-Norwalk, where the defendant filed a counterclaim; thereafter, the plaintiff withdrew the complaint in part; subsequently, the case was tried to the court, *Kavanewsky, J.*; judgment for the defendant on the complaint and for the plaintiff on the counterclaim; thereafter, the court granted in part the plaintiff's motion for reargument and for reconsideration, and issued certain corrected orders, and the plaintiff appealed to this court. *Affirmed.*

*James C. Riley*, with whom were *Trevor J. Larrubia* and, on the brief, *Thomas P. O'Connor* and *John M. Hendele IV*, for the appellant (plaintiff).

*Ari J. Hoffman*, for the appellee (defendant).

*Opinion*

ELGO, J. The plaintiff, Elise Zealand, appeals from the judgment of the trial court in this partition by sale action. On appeal, the plaintiff claims that the court improperly (1) concluded that she had a minimal interest in the property at issue, (2) excluded certain evidence that she sought to admit at trial, (3) exceeded its statutory authority under General Statutes § 52-500 (a) and (4) concluded that a payment of $25,000 by the defendant, Scott Balber, to the plaintiff constituted just compensation for her interest in that property. We affirm the judgment of the trial court.

In its September 23, 2019 memorandum of decision, the court found the following relevant facts. The parties "are attorneys who practiced law in New York and who had a common background in civil litigation. . . . The parties first became socially acquainted in 2007 . . . . They began dating. . . . In 2008, the defendant . . . began living with the plaintiff. In 2010, the parties had a child together.

"At or about the same time, the defendant proposed marriage to the plaintiff and gave her a diamond ring. The plaintiff accepted the ring in contemplation of marriage, but the marriage never occurred. The plaintiff wanted the financial security she felt that the defendant could provide, but, at the same time, she had misgivings about marrying him. The defendant never truly pressed the situation, and he gave the plaintiff a large part of the financial security she wanted. After the birth of their child, the plaintiff left her employment. She continued as the child's primary caregiver. The defendant was the sole source of support for the plaintiff and their child. The defendant also funded and regularly contributed to a joint checking account which was used by the plaintiff and himself.

"In December, 2012, the parties purchased a home at 112 Hillspoint Road in Westport [Westport property]. It was intended to be a 'getaway' or 'country home.' It was to accommodate the parties and their own child, and also the defendant's two [older] children when he had visitation with them. The closing price was $1.16 million. Title to the [Westport] property was taken by the parties as tenants in common. It was financed with a mortgage for $925,000.[1] The equity needed to close, $235,000, and the closing costs . . . were completely funded by the defendant. The costs to carry the [Westport] property (i.e., payments on the mortgage, taxes and insurance) have been approximately $5300 per month, and utilities and regular property maintenance costs have been approximately $8000 per month. These amounts, too, have been funded solely by the defendant's earnings.

"The parties made improvements and repairs to the [Westport] property. The plaintiff was generally 'on-

site' more regularly than the defendant, so she arranged for or managed many of these [repairs]. Also, in addition to customary and necessary home furnishings, the parties purchased certain artwork. One of the pieces was referred to as a 'Punching Bag' by Jeffrey Gibson. . . . The defendant had a particular interest in the item, and he purchased it from a dealer with whom he had a close relationship. The dealer waived his customary markup, leaving the defendant to pay $36,000 for this piece. The plaintiff claims that it is worth 'well into the six figures.' She bases that upon the fact that the piece was loaned out to a gallery for exhibition and on her opinion that the artist's career was on the rise. The court does not find that the plaintiff's valuation is credible. Moreover, there was no reliable valuation by either party for other home furnishings. Finally, the court finds that, at the time of trial, the fair market value of the [Westport] property was approximately $1.2 million, and the mortgage debt was approximately $765,000.

"In the court's view, the relationship between the parties has been precarious. The tone and demeanor of each of the parties to one another during the trial corroborated this. The parties used [the Westport property] on the basis stated previously for not quite four years. In mid-2016, the plaintiff and the parties' child moved out of the [Westport] property. The defendant locked its doors. The plaintiff sold the diamond ring, which had been purchased by the defendant for $70,000, for $18,000. She retained the proceeds of the sale." (Footnote in original.)

On November 13, 2017, the plaintiff commenced this action seeking a partition by sale of the Westport property and the punching bag artwork.[2] In response, the defendant filed an answer accompanied by two special defenses.[3] A court trial was held over the course of three days, at which both parties testified.[4]

In its subsequent memorandum of decision, the court found that "[i]t is beyond dispute that the defendant was the sole source of providing the moneys to purchase the [Westport] property, to make improvements, to purchase furnishings, artwork and other artifacts, and to carry the mortgage debt and other property expenses. However, the plaintiff assisted in several ways. She worked with a broker to find the property, she followed up on matters for mortgage funding and she handled some preclosing inspections. After the closing, she was responsible for making arrangements for many repairs and for purchasing general furnishings. Both parties had a hand in identifying possible purchases." The court further found that the plaintiff had a "relatively minimal interest [in the property at issue] compared to that of the defendant. . . . [T]he plaintiff can receive an equitable and just compensation for that interest by means of a payment from the defendant, and . . . a sale is not necessary and would not better promote the relative

interests of the plaintiff and of the defendant. This is not a situation that demands a sale of these assets. There appears to be ample equity in the [Westport] property. A sale would carry with it attendant costs and expenses. A court-ordered sale would also likely signify that it is being sold under 'distress' conditions, which would most likely result in a lower price than one achieved on an open market. In the court's view, a lump sum payment to the plaintiff would equitably compensate her and would allow the defendant to control the retention or disposition of these assets without unnecessary penalty to him." The court thus ordered in relevant part that "the defendant shall have sole right, title [to] and interest [in] the [Westport] property, and to all furnishings and artwork therein . . . . The plaintiff shall have sole right, title [to] and interest [in] the diamond ring or to any proceeds from its sale. . . . The defendant shall pay the plaintiff the sum of $25,000 at the time of the plaintiff's transfer to the defendant of the plaintiff's right, title [to] and interest [in] the [Westport] property."

The plaintiff thereafter filed a motion to reargue, which the court granted, "limited to [the] claim that, under the present orders of the court, she continues to remain an obligor on the mortgage note, and what relief, if any, should be extended to her incident thereto." Following a hearing on October 29, 2019, the court entered a set of corrected orders that obligated the defendant, inter alia, to "complete a sale, a refinance or a like transaction that results in the satisfaction of the note and the recording of the lender's release of the mortgage deed such that [the] plaintiff bears no liability or exposure on or arising under said documents . . . ." The court also ordered the plaintiff to tender a quitclaim deed to the defendant, after which the defendant was required to make the previously ordered payment to the plaintiff in the amount of $25,000. The court rendered judgment accordingly, and this appeal followed.

As a preliminary matter, we note certain well established principles. "The right to partition has long been regarded as an absolute right, and the difficulty involved in partitioning property and the inconvenience to other tenants are not grounds for denying the remedy. No person can be compelled to remain the owner with another of real estate, not even if he become[s] such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afford[s] to every owner with another relief by way of partition . . . ." (Internal quotation marks omitted.) *Fernandes* v. *Rodriguez*, 255 Conn. 47, 55, 761 A.2d 1283 (2000). The statutory authority for "the power of our courts to order a sale in partition proceedings was enacted in 1844. . . . The early decisions of this

court dealing with the new statutory remedy of partition by sale emphasized that [t]he statute giving the power of sale introduces . . . no new principle; it provides only for an emergency, when a division cannot be well made, in any other way. . . . [A] sale of one's property without his consent is an extreme exercise of power warranted only in clear cases." (Citations omitted; internal quotation marks omitted.) Id., 56–57.

The authority to order a partition by sale is codified in § 52-500 (a), which provides: "Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners. If the court determines that one or more of the persons owning such real or personal property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners." In her operative complaint, the plaintiff sought a partition by sale of certain real and personal property.

As this court has observed, "[a] partition action is equitable in nature. Accordingly, [t]he determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *DiCerto* v. *Jones*, 108 Conn. App. 184, 188–89, 947 A.2d 409 (2008); see also *Fernandes* v. *Rodriguez*, supra, 255 Conn. 59 ("[b]ecause a partition by sale, although a creature of statute, is an equitable action . . . it is within the trial court's discretion to order a partition by sale"). With those precepts in mind, we turn to the plaintiff's claims.

I

The plaintiff first claims that the court improperly concluded that she had a minimal interest in the property at issue. We disagree.

In a partition action, the court's determination of a party's interest is equitable in nature and, thus, governed by the abuse of discretion standard. See, e.g., *DiCerto* v. *Jones*, supra, 108 Conn. App. 191 (concluding that "the court did not abuse its discretion in finding the equitable interests of the plaintiff and the defendant as it did"); *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 612, 879 A.2d 897 (same), cert. denied, 275 Conn. 927,

883 A.2d 1243 (2005), cert. denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006); cf. *Kakalik* v. *Bernardo*, 184 Conn. 386, 395, 439 A.2d 1016 (1981) ("[t]he determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court").

Underlying the court's determination as to the equitable interests of the parties were several factual findings, all of which are supported by the evidence in the record before us. The court found that "[i]t is beyond dispute that the defendant was the sole source of providing the moneys to purchase the [Westport] property, to make improvements, to purchase furnishings, artwork and other artifacts, and to carry the mortgage debt and other property expenses." The court also emphasized that the Westport property was a " 'getaway' " home in Connecticut for the parties, who, at all relevant times, maintained a principal residence in New York.[5] The court found that the parties utilized the Westport property in that limited capacity for approximately three and one-half years. In addition, the court found that the parties had not reached an agreement as to the disposition of the property in the event that they were to part ways.

Those factual findings make the present case readily distinguishable from *Fusco* v. *Austin*, 141 Conn. App. 825, 64 A.3d 794 (2013), on which the plaintiff heavily relies. *Fusco* did not involve a getaway home but, rather, concerned the partition of real property that served as the parties' principal residence for almost one-quarter century. Id., 827–28. Unlike the present case, the parties in *Fusco* had "entered [into] an agreement [regarding] their relative rights and responsibilities relating to the property," which provided that, "if the property is sold, the defendant will receive 55 percent of the net proceeds and the plaintiff will receive 45 percent of the net proceeds, subject to either party's claim for verified costs for property improvements." (Internal quotation marks omitted.) Id., 827; see also *DiCerto* v. *Jones*, supra, 108 Conn. App. 190–91 (emphasizing that trial court "found that there was an agreement between the parties . . . that the defendant was to pay for various expenses without reimbursement from the plaintiff"). Equally significant, the court in *Fusco* found that, "during the period of the parties' cohabitation, their contributions to the property were relatively equal"; *Fusco* v. *Austin*, supra, 834; a stark contrast to findings made by the trial court in the present case.

Furthermore, although it is undisputed that the parties both were obligors on the note and mortgage on the Westport property, the plaintiff testified at trial that she had no recollection of signing either instrument and was shocked to learn of her status as a mortgagor. In its memorandum of decision, the court found her testimony incredible. See footnote 1 of this opinion. The court also was presented with uncontroverted evidence

that the defendant alone obtained both preapproval and a mortgage commitment from the mortgage broker for the Westport property; the plaintiff thus was not essential to securing that mortgage. Contra *Fernandes* v. *Rodriguez*, supra, 90 Conn. App. 612 (trial court specifically found that "the defendant's participation had been essential to securing the mortgage").

Moreover, with respect to the punching bag artwork, the court found that the defendant possessed "a particular interest in the item, and he purchased it from a dealer with whom he had a close relationship." The court was presented with uncontroverted evidence that the defendant paid for that piece of art entirely with funds from his personal Wells Fargo account, which was not shared with the plaintiff. In addition, an invoice for that purchase was admitted into evidence at trial, which lists the defendant as the sole purchaser of that artwork. The court was free to credit that evidence. See *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 646, 203 A.3d 645, cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019).

As our Supreme Court has "stated on other occasions, it is not always true that each tenant in common . . . is entitled to equal shares" in the property. *Fernandes* v. *Rodriguez*, supra, 255 Conn. 60; see also *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950) ("Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered . . . ."). *Fernandes* v. *Rodriguez*, supra, 90 Conn. App. 601, is instructive in this regard. In that case, like the one presently before us, the parties possessed a one-half interest in the real property as joint tenants. Id., 609 n.5. For that reason, the defendant argued that the trial court was "required . . . to award him one half of the proceeds of the partition sale." Id., 609. This court disagreed, noting that the defendant's contention "finds no support in the case law." Id. To the contrary, we emphasized that the trial court specifically had found that, "although the defendant had been essential to the purchase of the property in that he had signed and executed the mortgage and note, this constituted his only activity on the mortgage. The plaintiff made all payments and assumed full responsibility for the management of the property. The court concluded that, although the defendant's participation had been essential to securing the mortgage, it had been minimal after this initial step. On the basis of these findings, the court found the defendant's equitable interest in the property to be 5 percent and the plaintiff's to be 95 percent." Id., 612. Because those findings were substantiated by the record, this court concluded that the trial court "did not abuse its discretion in finding the equitable interests of the [parties] as it did." Id.

We likewise conclude that the court in the present case reasonably could have determined, in balancing the equities of the parties with respect to the property in question, that the plaintiff possessed a "relatively minimal interest compared to that of the defendant." Moreover, the court was in a superior position to assess the testimony offered by both parties and, in several instances, chose to credit the defendant's testimony over that of the plaintiff, as was its exclusive prerogative. See, e.g., *Rissolo* v. *Betts Island Oyster Farms, LLC*, 117 Conn. App. 344, 354–55, 979 A.2d 534 (2009) ("[t]he trier of fact . . . is the sole arbiter of credibility, and thus is free to accept or reject, in whole or in part, the testimony offered by either party" (internal quotation marks omitted)). On our review of the record, we conclude that the court did not abuse its discretion in determining the respective interests of the parties in the property at issue.

## II

The defendant next claims that the court abused its discretion by declining to admit certain testimony regarding nonmonetary contributions. We do not agree.

We begin by noting that "[t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, 267 Conn. 279, 328–29, 838 A.2d 135 (2004).

The following undisputed facts are relevant to the plaintiff's claim. The plaintiff, a licensed attorney and experienced litigator, appeared in a self-represented capacity at trial. Over the objection of the defendant, the court permitted the plaintiff to present a full day of testimony in narrative form. In that testimony, the plaintiff discussed her nonmonetary contributions to the defendant and the children.

For example, the plaintiff testified that "after I gave birth to our child in 2010 . . . [the defendant and I]

determined that I would leave my job, stay home, take care of our child and, when we had the older [children] from [the defendant's] first marriage, that I would care for them, as well." She testified that "I paid for groceries. I paid for diapers. I purchased . . . furniture for the children. I bought their clothing. When I had resources, I devoted my resources to the well-being and the upkeep of our family." With respect to nonmonetary contributions to the defendant's career, the plaintiff testified: "I took the role of supporting [the defendant] in his career very seriously. I took the role, my role as a caregiver for our children extremely seriously. I devoted my time and my . . . attention, and my energy to managing our household, to ensuring the children had everything they needed, and to being a constant support for [the defendant] . . . ." The plaintiff also testified that, at the time that the Westport home was purchased, she "was working to support [the defendant] in his career and managing our home." The plaintiff further testified that she contributed to the defendant's career by "using not only my background as an attorney, but the contacts that I had made through many, many years of practice." She testified that she "was committed" to the defendant, who "often held me out as his wife to clients. He held me out as his wife to business associates, including a recruiter who was helping him find a position in a new firm. . . . He often referred to me as his wife in front of his colleagues, as well."

The plaintiff nonetheless claims that the court abused its discretion by precluding her from introducing evidence that she helped further the defendant's career by "caring for his children," by "introducing him to her contacts," and by "hosting work-related events" for the defendant. Because such testimony was cumulative of that already offered by the plaintiff in her narrative testimony, she cannot establish reversible evidentiary error. See, e.g., *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 204, 128 A.3d 901 (2016).

The plaintiff also claims that the court improperly granted the defendant's objection to her testimony regarding the discount obtained on the purchase of the punching bag artwork. At trial, the plaintiff testified in relevant part that "the discount [on the purchase of that artwork] was based upon our personal relationship with [the art dealer] and his wife. . . . We attended anniversary parties with them. We went to art openings with them. I went to dinners with them, and I did that, again, in support of [the defendant] and his career." The defendant raised an objection on relevance grounds, which the court sustained, stating: "What has been admitted is that this artwork was purchased under the circumstances you recited at a discount, apparently, by a client of the defendant or a mutual acquaintance . . . [and that] there was a discounted value given to it because of that relationship." In light of the court's explanation of its ruling, the plaintiff has not demon-

strated how the preclusion of her testimony was prejudicial to her. Making every reasonable presumption in favor of the correctness of that ruling, and mindful that an evidentiary ruling will be overturned only when a substantial prejudice is shown; *PSE Consulting, Inc.* v. *Frank Mercede & Sons, Inc.*, supra, 267 Conn. 328–29; we conclude that the court did not abuse its discretion in precluding the evidence in question and that the plaintiff has not shown any harm from such preclusion.

### III

The plaintiff also contends that the court exceeded its statutory authority under § 52-500 (a). She is mistaken.

As this court has observed, "§ 52-500 (a) permits the court to order an equitable distribution of the property *if* it determines that one or more of the persons owning the property have only a minimal interest in the property *and* a sale would not promote the interest of the owners. Under these circumstances, the court may order the payment of just compensation to the owners of the minimal interest, as will better promote the interests of the owners." (Emphasis in original.) *Fusco* v. *Austin*, supra, 141 Conn. App. 833. The court in the present case determined that the plaintiff had a minimal interest in the property in question, as discussed in part I of this opinion. The court also determined that an order requiring the sale of the property would not promote the interests of the owners, stating in relevant part: "[T]he plaintiff can receive an equitable and just compensation for that interest by means of a payment from the defendant, and that a sale is not necessary and would not better promote the relative interests of the plaintiff and of the defendant. This is not a situation that demands a sale of these assets. There appears to be ample equity in the [Westport] property. A sale would carry with it attendant costs and expenses. A court-ordered sale would also likely signify that it is being sold under 'distress' conditions, which would most likely result in a lower price than one achieved on an open market. In the court's view, a lump sum payment to the plaintiff would equitably compensate her and would allow the defendant to control the retention or disposition of these assets without unnecessary penalty to him." The evidence in the record before us substantiates that determination.

The plaintiff nonetheless claims that the court's "conclusion that a sale was necessary undermined and was inconsistent with its . . . conclusion that a sale would not promote the interests of the parties." Contrary to that assertion, the court never concluded that a sale was necessary. The court merely ordered the defendant to "complete a sale, a refinance or a like transaction that results in the satisfaction of the note and the recording of the lender's release of the mortgage deed such that [the] plaintiff bears no liability or exposure on or arising under said documents . . . ." The plain

intent of that order was to absolve the plaintiff of any legal obligation with respect to the existing note and mortgage on the property; the defendant was not obligated to sell the property to effectuate that intent. We therefore reject the plaintiff's contention that the court exceeded its statutory authority pursuant to § 52-500 (a).

## IV

As a final matter, the plaintiff claims that the court abused its discretion in awarding her $25,000 as just compensation pursuant to § 52-500 (a). We do not agree.

With respect to the punching bag artwork, the court was presented with uncontroverted evidence that the defendant paid for that piece of art entirely with funds from his personal Wells Fargo account, which was not shared with the plaintiff. In addition, an invoice for that purchase was admitted into evidence at trial, which lists the defendant as the sole purchaser of that artwork. In light of that evidence, the court reasonably could have concluded, in exercising its equitable discretion, that the plaintiff was not entitled to compensation for that piece of art.

With respect to the Westport property, the court found that "[i]t is beyond dispute that the defendant was the sole source of providing the moneys to purchase the [Westport] property, to make improvements, to purchase furnishings, artwork and other artifacts, and to carry the mortgage debt and other property expenses." The court also found that the Westport property was purchased for $1,160,000 and that it had a fair market value of $1,200,000 at the time of trial, reflecting an increase of $40,000. In its memorandum of decision, the court recognized the plaintiff's nonmonetary contributions to the property, stating: "She worked with a broker to find the property, she followed up on matters for mortgage funding and she handled some preclosing inspections. After the closing, she was responsible for making arrangements for many repairs and for purchasing general furnishings." In light of those contributions, the court awarded the plaintiff $25,000 as just compensation. On the record before us, we cannot say that the court abused its equitable discretion in so doing.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Title to the [Westport] property was originally to be solely in the name of the defendant. However, when the plaintiff learned of this, she voiced concerns to the defendant, and title was ultimately taken in both of the parties' names. Likewise, the mortgage note and deed were signed by both parties . . . . [A]t trial, when the plaintiff was confronted with the fact that she had signed the mortgage note and deed, she expressed complete astonishment. The court finds that reaction to have been somewhat incredible."

[2] Although the plaintiff in her complaint also requested a partition by sale of "all [of] the personal property other than clothing" located in the Westport property, little mention was made of that personal property at trial, and the court specifically found that "there was no reliable valuation by either party"

for such property. In the first sentence of her principal appellate brief, the plaintiff states that "[t]his case involves the partition of real property and artwork owned by the parties as tenants in common." Moreover, neither party has raised any issue on appeal with respect to personal property apart from the punching bag artwork. We, therefore, confine our review accordingly.

In addition, we note that the plaintiff's complaint contained counts sounding in civil theft, breach of fiduciary duty, and conversion. On February 20, 2018, the plaintiff filed a withdrawal of those counts.

[3] In his special defenses, the defendant raised the doctrines of unclean hands and estoppel. The defendant also filed a counterclaim alleging conversion, statutory theft, and unjust enrichment as a result of the plaintiff's retention of the diamond ring. In its memorandum of decision, the court concluded that the ring was a conditional gift to the plaintiff and that the defendant had "abandoned or waived any intention attached to the initial giving of the ring." The court, therefore, concluded that the plaintiff was "entitled to the ring or to any proceeds from its sale." The propriety of that determination is not at issue in this appeal.

[4] The plaintiff appeared before the Superior Court in a self-represented capacity. She is represented by legal counsel in this appeal.

[5] At trial, the defendant testified that the parties "were not in the [Westport] house very frequently. It was a weekend house. . . . [D]uring the school year, the children had activities, so we'd go up periodically."

―――――――――――――――――――――