******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# D. J. *v.* F. D.*
## (AC 46821)

Bright, C. J., and Moll and Prescott, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court ordering the equitable distribution of real property that he jointly owned with the defendant and ordering the defendant to pay him $2000 as just compensation for his interest in the property pursuant to the applicable statute (§ 52-500 (a)). The plaintiff claimed, inter alia, that the court abused its discretion in determining that he had only a minimal interest in the property. *Held*:

The trial court did not abuse its discretion in determining that the plaintiff had only a minimal interest in the property for purposes of § 52-500 (a) because that determination was supported by the legislative history, which indicated that the plaintiff's one-half fee interest in the property did not preclude such a finding, and the relevant equitable factors.

The trial court did not abuse its discretion in making its award of just compensation to the plaintiff for his interest in the property because his one-half ownership interest did not entitle him to 50 percent of the equity, and the court found, inter alia, that the plaintiff did not contribute financially to the property's purchase, mortgage, taxes, or insurance, that he provided only $2000 in maintenance expenses, and that his claims of other contributions to the maintenance of the property were not credible.

Argued May 20—officially released November 19, 2024

*Procedural History*

Action for, inter alia, the partition of certain of the parties' real property, brought to the Superior Court in the judicial district of New London, where the court, *O'Hanlan, J.*, granted the plaintiff's motion to cite in Mortgage Electronic Registration Systems, Inc., as a party defendant; thereafter, the named defendant filed a counterclaim; subsequently, the case was tried to the

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, a protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

court, *Goodrow, J.*; judgment for the named defendant on the complaint and in part on the counterclaim, from which the plaintiff appealed to this court. *Affirmed.*

*Aimee L. Siefert*, for the appellant (plaintiff).

*Edward C. Taiman, Jr.*, for the appellee (named defendant).

*Opinion*

MOLL, J. In this partition action, the plaintiff, D. J., appeals from the judgment of the trial court ordering the equitable distribution of a parcel of real property jointly owned by the plaintiff and the defendant F. D.[1] and ordering the defendant to pay the plaintiff $2000 as just compensation for his interest in the property pursuant to General Statutes § 52-500 (a).[2] On appeal, the plaintiff contends that the court abused its discretion in determining that (1) he had only a minimal interest in the property and (2) the just compensation owed to him for his interest in the property was $2000. We disagree and, accordingly, affirm the judgment of the trial court.

---

[1] Mortgage Electronic Registration Systems, Inc. (MERS), was cited in as an additional defendant in March, 2022. In his operative amended complaint dated March 2, 2022, the plaintiff alleged that MERS may claim an interest in the property at issue by virtue of a mortgage on the property. Although MERS had filed an appearance, counsel for MERS did not appear at trial, and the plaintiff's and F. D.'s respective counsel represented that the parties had reached an agreement regarding MERS' interest in the action. MERS is not participating in this appeal. Accordingly, we refer to F. D. as the defendant.

[2] General Statutes § 52-500 (a) provides: "Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners. If the court determines that one or more of the persons owning such real or personal property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners."

The following facts, as found by the trial court or as are undisputed in the record, and procedural history are relevant to our resolution of this appeal. In 2015, the defendant purchased certain real property in North Franklin (property). The plaintiff did not contribute financially to the purchase of the property. The parties were involved in a romantic relationship prior to the purchase of the property, and, "[a]t some point after the purchase, the plaintiff moved into the home, as did the plaintiff's son." The defendant was solely responsible for the mortgage, taxes, and insurance, and she made such payments. The plaintiff contributed $400 per month toward groceries and other household items during most of the time that he lived with the defendant. The court also found that the value of the plaintiff's contribution toward the maintenance of the property was $2000.

On November 27, 2017, the defendant quitclaimed the property to the parties as joint tenants with rights of survivorship. In 2019, the romantic relationship of the parties ended, and the plaintiff moved from the property, taking with him some furnishings purchased by the defendant and making no financial contributions toward the property thereafter. The parties stipulated that, at the time of trial, the fair market value of the home was $280,000, and the mortgage payoff was $132,000, leaving $148,000 in equity.

On July 7, 2021, the plaintiff commenced the present action against the defendant. In his operative, two count, amended complaint dated March 2, 2022, the plaintiff sought (1) the partition of the property pursuant to General Statutes § 52-495 and (2) an accounting and contribution from the defendant for expenses related to the property pursuant to the common law and/or General Statutes § 52-404 (b). On September 1, 2022, the defendant filed an answer, a special defense asserting bad faith by the plaintiff, and a one count

counterclaim seeking an accounting and contribution from the plaintiff for expenses related to the property. On September 2, 2022, the plaintiff filed a reply denying the allegations set forth in the defendant's special defense, and, on March 22, 2023, the plaintiff filed an answer to the defendant's counterclaim.

On April 20, 2023, the matter was tried to the court, *Goodrow, J.* The court heard testimony from the plaintiff and the defendant and admitted numerous exhibits into evidence. Following the close of evidence, the court asked the parties to state during closing arguments "exactly what it is each side is requesting the court to do in this case." The plaintiff's counsel requested that the court order a partition by sale and that the proceeds be split evenly between the plaintiff and the defendant. The defendant's counsel requested that the property not be partitioned by sale and that any required payment of just compensation to the plaintiff in connection with the equitable distribution of the property be minimal. Thereafter, the parties filed posttrial briefs.

On June 30, 2023, the court issued a memorandum of decision ordering an equitable distribution of the property and just compensation to be paid to the plaintiff. The court found "the defendant's testimony generally credible" and "the plaintiff's testimony not credible." More specifically, the court expressly did not credit the plaintiff's testimony that (1) "he paid $60,000 toward the maintenance and upkeep of the . . . property," instead finding that "the value of the plaintiff's contribution to the maintenance of the property was $2000," (2) "he paid the defendant $4000 when he left the property," or (3) he contributed $1000 on a monthly basis toward property expenses, instead finding that he paid the defendant $400 per month for groceries and other household expenses during most of the time while he lived with the defendant and has made no financial contribution toward the property since he vacated it in

2019.[3] The court concluded, pursuant to § 52-500 (a), that "the plaintiff has only a minimal interest in the property and a sale would not promote the interests of the parties as owners" because "the defendant seeks to remain in the property to provide stability and security for herself and her family."[4] Accordingly, the court ordered that "[t]he plaintiff shall transfer his interest in the property by quitclaim deed to the defendant by August 30, 2023, and that simultaneously therewith, the defendant shall transfer to the plaintiff the sum of [$2000] as just compensation." On July 19, 2023, the plaintiff filed a motion to reargue, which the court denied. This appeal followed.

Before addressing the merits of the plaintiff's claims on appeal, we begin by setting forth the relevant language of the partition statute at issue. Section 52-500, titled in part "Sale or equitable distribution of real or

---

[3] At trial, the plaintiff was asked, inter alia, about (1) income reported in his tax filings, (2) his ability to afford making his claimed contributions toward improvements to the property, (3) the circumstances surrounding other women transferring property to him, and (4) his ability to produce bank statements. In response, the plaintiff invoked his fifth amendment privilege against self-incrimination and refused to respond to the questions. The court instructed the parties to address in their posttrial briefs the question of "whether or not the court has the discretion to draw adverse inferences in a civil action, different from a criminal action, when an individual asserts their fifth amendment privilege." In her posttrial brief, citing *Baxter* v. *Palmigiano*, 425 U.S. 308, 318, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976), among others, the defendant argued that the fifth amendment does not forbid the drawing of an adverse inference in a civil action when a party invokes the privilege when refusing to testify in response to a probative question. The defendant argued that the court should draw such an inference. The plaintiff argued that, although the privilege does not prohibit the drawing of an adverse inference in a civil action, "this does not negate the work that [the plaintiff] put in on the property." In its memorandum of decision, the court stated that it was drawing "no adverse inference regarding the assertion by the plaintiff of his constitutional right. Absent any consideration of such assertion, the plaintiff's testimony, particularly as to key issues in dispute, was simply not credible."

[4] At trial, the defendant testified that she was residing at the property with her sister and her sister's family.

personal property owned by two or more persons," provides in relevant part: "(a) Any court of equitable jurisdiction may, upon the complaint of any person interested, order the sale of any property, real or personal, owned by two or more persons, when, in the opinion of the court, a sale will better promote the interests of the owners. If the court determines that one or more of the persons owning such real or personal property have only a minimal interest in such property and a sale would not promote the interests of the owners, the court may order such equitable distribution of such property, with payment of just compensation to the owners of such minimal interest, as will better promote the interests of the owners. . . ." As we discuss more fully in this opinion, the statute was amended in 2004 to add the final sentence of subsection (a)—to allow a trial court, upon making the requisite findings, to order equitable distribution of property—instead of limiting the remedy in a partition action to partition in kind or partition by sale (2004 amendment). See Public Acts 2004, No. 04-93, § 1 (P.A. 04-93).

Additionally, we recognize the long-standing principle that "[a] partition action is equitable in nature. Accordingly, [t]he determination of what equity requires is a matter for the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Our review of a trial court's exercise of the . . . discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *DiCerto* v. *Jones*, 108 Conn. App. 184, 188–89, 947 A.2d 409 (2008).

I

The plaintiff first claims that, in connection with ordering the equitable distribution of the property (as

opposed to a partition by sale, as he had requested), the trial court abused its discretion in determining that he had only a minimal interest in the property for purposes of § 52-500 (a).[5] Specifically, as clarified by the plaintiff's counsel during oral argument before this court, the plaintiff argues that, by virtue of his 50 percent fee interest, as reflected in the 2017 quitclaim deed alone, the court erred in determining that he had only a minimal interest. We disagree.

Resolving the plaintiff's claim requires us to construe the term "minimal interest," as set forth in § 52-500 (a), to determine whether it (1) relates solely to a property owner's fee interest or (2) contemplates consideration of any relevant equitable factors in addition to that fee interest. Thus, we are presented with a question of statutory interpretation over which our review is plenary. See *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, 221 Conn. App. 256, 270, 301 A.3d 1111, cert. denied, 348 Conn. 924, 304 A.3d 442 (2023), and cert. denied, 348 Conn. 924, 304 A.3d 442 (2023). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is

---

[5] We note that the plaintiff does not challenge the trial court's related determination that a sale would not promote the interests of the parties.

not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id.

"[M]inimal interest," as that term is used in § 52-500 (a), is not statutorily defined, nor is either of the individual terms "minimal" or, of most import, "interest." See General Statutes § 52-500 (a). "Generally, in the absence of statutory definitions, we look to the contemporaneous dictionary definitions of words to ascertain their commonly approved usage." (Internal quotation marks omitted.) *Wind Colebrook South, LLC* v. *Colebrook*, 344 Conn. 150, 164, 278 A.3d 442 (2022). At the time of the 2004 amendment, Merriam-Webster's Collegiate Dictionary (Merriam-Webster) defined "interest" as (1) a "right, title, or legal share in something," (2) "participation in advantage and responsibility," (3) "a charge for borrowed money generally a percentage of the amount borrowed," (4) "the profit in goods or money that is made on invested capital," and (5) "an excess above what is due or expected . . . ." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) p. 652. Black's Law Dictionary contemporaneously defined "interest" as (1) "[a]dvantage or profit, esp. of a financial nature" and (2) "[a] legal share in something; *all or part of a legal or equitable claim to or right in property* . . . ." (Emphasis added.) Black's Law Dictionary (7th Ed. 1999) p. 816; see also Black's Law Dictionary (8th Ed. 2004) p. 828 (same). Merriam-Webster also contemporaneously defined "minimal" as "relating to or being a minimum: as" (1) "the least possible," (2) "barely adequate," and (3) "very small or slight . . . ." Merriam-Webster's Collegiate Dictionary, supra, p. 791.

These definitions provide little, if any, guidance in resolving whether the term "minimal interest," as set forth in § 52-500 (a), relates solely to a property owner's fee interest or contemplates the consideration of equitable factors in addition thereto. Because we consider either interpretation to be reasonable, we conclude that the meaning of "minimal interest," for purposes of § 52-500 (a), is not plain and unambiguous. See *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 303, 140 A.3d 950 (2016) ("[t]he test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation" (internal quotation marks omitted)).

Having concluded that the term "minimal interest" is ambiguous, we turn to the relatively scant legislative history and the circumstances surrounding the enactment of the 2004 amendment to § 52-500 (a) for guidance.[6] See *AAA Advantage Carting & Demolition Service, LLC* v. *Capone*, supra, 221 Conn. App. 270. During a Judiciary Committee hearing regarding the 2004 amendment, Attorney Deborah Fuller, a representative from the external affairs division of the Judicial Branch, who appeared in support of Senate Bill No. 290, 2004 Sess., titled "An Act Concerning Partition Actions," which was part of the Judicial Branch's legislative package, testified that the 2004 amendment "would provide judges hearing partition actions with more flexibility to resolve those cases." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 2004 Sess., p. 1174. In addition to the two possible modes of relief then available to a trial court in a partition action (i.e., partition in kind and partition by sale), the 2004 amendment sought to

---

[6] As stated previously, § 52-500 was amended in 2004 to add the final sentence of subsection (a) to allow a trial court in a partition action—upon finding that (1) one or more property owners has only a "minimal interest" in the property and (2) a sale would not promote the interests of the owners—to order equitable distribution of the property, with payment of just compensation to the owner(s) of such minimal interest. See P.A. 04-93.

provide a third mode of relief, namely, the ability to order—upon finding that one or more property owners has only a "minimal interest" in the property and that a sale of the property would not promote the interest of the owners—that a party's "minimal interest" be bought out for just compensation in exchange for a quitclaim deed. Id. This third mode of relief, which already existed in marital dissolution actions, was proposed in direct response to a decision by our Supreme Court in *Fernandes* v. *Rodriguez*, 255 Conn. 47, 761 A.2d 1283 (2000). See Conn. Joint Standing Committee Hearings, supra, p. 1174, remarks of Deborah Fuller.

By way of background, in *Fernandes*, the parties had purchased certain real property and held title thereto as joint tenants. *Fernandes* v. *Rodriguez*, supra, 255 Conn. 49–50. The plaintiff brought a partition action, seeking a partition in kind or, alternatively, a partition by sale. Id., 49. Following a trial, the trial court found that the defendant's interest was minimal. Id., 51–52. In support thereof, the court found that the defendant had paid less than 7 percent of the down payment toward the purchase of the property and subsequently had contributed little or nothing to the property. Id., 51. Whereupon the court found that the defendant should recover (1) his net share of certain rental proceeds, (2) the amount he paid toward the closing costs, and (3) 10 percent of the equity in the property. Id. The court ordered that the plaintiff pay the defendant a sum certain and that the defendant execute and deliver to the plaintiff a quitclaim deed relinquishing his interest in the property. Id., 52. On appeal to this court, the defendant claimed, inter alia, that the trial court had exceeded its authority in ordering equitable distribution by payment of money rather than ordering a partition by sale or in kind. *Fernandes* v. *Rodriguez*, 54 Conn. App. 444, 445, 735 A.2d 871 (1999), rev'd, 255 Conn. 47, 761 A.2d 1283 (2000). We concluded that, based on the underlying

findings that "one owner had only a minimal interest in the property and that the other had a substantial interest and resided on the property," the judgment requiring the payment of money in exchange for a conveyance of title was proper. Id., 453.

Our Supreme Court disagreed and held that, in a partition action, pursuant to §§ 52-495 and 52-500, as those statutes then existed, a trial court did not have the equitable power to order, as relief, the payment of money from one property owner to another holding a minimal interest in exchange for a quitclaim deed to the real property. *Fernandes* v. *Rodriguez*, supra, 255 Conn. 53–55. Instead, the court held that the trial court was limited to the then existing statutory remedies of partition in kind or partition by sale. Id., 57.

With this judicial decision as the impetus to the proposed legislation allowing for the "equitable distribution of [the] property, with payment of just compensation to the owners of [a] minimal interest"; Senate Bill No. 290; when asked during the previously mentioned Judiciary Committee hearing by then Senator Andrew J. McDonald whether the Judicial Branch was concerned "about how far the definition of 'minimal' might be taken," Attorney Fuller replied: "[W]e think that the judges can probably determine that. . . . I'm not sure how you would statutorily define it, if you tried to put something in the definition as opposed to a case-by-case basis. I mean, I don't know if you could put a percentage on it. . . . I think that the judges would be capable of making that determination . . . ." Conn. Joint Standing Committee Hearings, supra, p. 1175. Attorney Fuller further testified that the interest involved would not be limited to a property owner's fee interest. See id.; see also id., p. 1176 ("I think the judge would have to consider . . . if there were other factors, they would have to consider that . . . . I think it would be an equitable solution and . . . they would

be looking at the whole picture, not just the money that somebody put into it, by any means.").

During the legislative debate in the Senate, Senator McDonald stated that the 2004 amendment "allows further discretion and opportunity for a judge of the Superior Court to consider all of the merits and equitable considerations of an action and potentially avoiding needless expenses associated with a partition sale." 47 S. Proc., Pt. 4, 2004 Sess., pp. 1130–31.

During the legislative debate in the House of Representatives, in an exchange with no other hypothetical facts provided, Representative Robert M. Ward inquired whether a "50 percent interest" is a "minimal interest" under the 2004 amendment. 47 H.R. Proc., Pt. 7, 2004 Sess., p. 2026. Representative Christopher R. Stone, who moved for the bill's adoption; id., p. 2023; responded that "the definition of minimal interest is not contained in the bill and it would be determined by the court under the totality of the circumstances." Id., 2026. Representative Stone went on to state: "[I]n my opinion . . . [a] 50 percent interest would not be a minimal interest . . . and would most likely be handled in another way, most likely a sale." Id. Representative Ward then stated, "I just thought it was important to get on the record for legislative intent that minimal interest was meant to be what the word means in common English, a relatively small interest." Id. Representative Ward proceeded to convey his opinion that a 5 percent or 8 percent interest would be a minimal interest, whereas a 35 percent or a 50 percent interest would be "a substantial interest . . . ." Id., pp. 2026–27. Thereafter, Representative Robert Farr stated: "I just want to add to the legislative history here that it isn't just the size [of one's interest in property]. It's also, I think, the cost of the sale. . . . I think the cost [of the sale] has to [be] weigh[ed] . . . as one of the factors as well [as] the percentages. We grappled with trying

to put some definition in the statute and decided, since . . . the court is a court of equity in these cases, that we felt it was best to leave the discretion to the court to determine when it's most reasonable to do this . . . ." Id., p. 2028.

Our review of the legislative history of the 2004 amendment to § 52-500 (a) leads us to conclude that the legislature intended for a trial court to determine whether an individual holds a "minimal interest" in property on the basis of the totality of the circumstances and not merely on the basis of the owner's fee interest. The legislative history reflects that a property owner's fee interest is but one factor for a court to consider in determining whether the owner's interest in the property is minimal. Stated differently, one's fee interest as reflected in the relevant deed is not dispositive. Although there are a few legislative comments to suggest that a 50 percent ownership interest would not be "minimal," these legislative comments only go so far in providing interpretive guidance. That is, the comments were made in the context of hypotheticals with all other things being equal. In this connection, we recognize that in many, if not most, circumstances, a one-half ownership interest likely would *not* result in a court's determination that such interest is minimal for purposes of § 52-500 (a). Nevertheless, it bears repeating that " '[t]he determination of what equity requires is a matter for the discretion of the trial court' to be determined on a case-by-case basis. . . . *DiCerto* v. *Jones*, supra, 108 Conn. App. 188 n.3." *Cavanagh* v. *Richichi*, 212 Conn. App. 402, 416, 275 A.3d 701 (2022).

In addition, the fact that the 2004 amendment was enacted in response to *Fernandes* v. *Rodriguez*, supra, 255 Conn. 47, in which each owner held an undivided one-half fee interest in the property; *Fernandes* v. *Rodriguez*, 90 Conn. App. 601, 609 n.5, 879 A.2d 897, cert. denied, 275 Conn. 927, 883 A.2d 1243 (2005), cert.

denied, 547 U.S. 1027, 126 S. Ct. 1585, 164 L. Ed. 2d 312 (2006); bolsters our conclusion that a one-half fee interest *may* be deemed, if the totality of the circumstances warrants, a minimal interest for purposes of the equitable contribution option set forth in § 52-500 (a). In sum, guided by the legislative history, we reject the plaintiff's assertion that his one-half fee interest in the property precludes, as a matter of law, a determination that his interest in the property was minimal for purposes of § 52-500 (a).[7]

We note that taking the plaintiff's position to its logical conclusion would deprive the court of the additional equitable discretion that the legislature gave the court when it enacted the 2004 amendment to § 52-500 (a), while providing no real benefit to the plaintiff. That is, if a one-half interest in real property could not, as a matter of law, be considered a "minimal interest" for purposes of § 52-500 (a), a trial court, in crafting a remedy, would be limited, as it was prior to the 2004 amendment, to ordering either a partition in kind or a partition by sale. See *Fernandes* v. *Rodriguez*, supra, 255 Conn. 57 (prior to 2004 amendment creating third mode of relief, court reaffirmed that partition by division and partition by sale were only two modes of relief available to trial court in partition action). Forcing the parties to remain in an ownership relationship would not be a legally permissible option. See *Geib* v. *McKinney*, 224 Conn. 219, 224, 617 A.2d 1377 (1992) (" 'No person can be compelled to remain the owner with another of real estate, not even if he becomes such by his own act; every owner is entitled to the fullest enjoyment of his property, and that can come only

[7] We note that in *Zealand* v. *Balber*, 205 Conn. App. 376, 257 A.3d 411 (2021), this court upheld the trial court's determination that, notwithstanding that the plaintiff was a tenant in common with a one-half fee interest in the property at issue, the plaintiff's interest was minimal pursuant to § 52-500 (a); however, this court did not engage in a statutory analysis of the term "minimal interest" in that decision. Id., 385–88.

through an ownership free from dictation by others as to the manner in which it may be exercised. Therefore the law afforded to every owner with another relief by way of partition . . . .' *Johnson* v. *Olmsted*, 49 Conn. 509, 517 (1882) . . . ." (Citations omitted.)). Thus, in the plaintiff's view, the court would have to choose between a partition in kind, which likely is impracticable in the context of a parcel that includes a physical structure such as a house, and a partition by sale. A partition by sale likely would lead to the same result for the party seeking partition (in this case, the plaintiff) as he would achieve through the statute's third mode of relief, i.e., equitable distribution (the option exercised by the trial court). Here, had the trial court ordered a partition by sale, the court would have had the discretion to award the plaintiff the same amount he complains of now as just compensation. See, e.g., *Fernandes* v. *Rodriguez*, supra, 255 Conn. 60 (in context of partition by sale, trial court may distribute sale proceeds in accordance with equitable interest of each party). Other than vindicating some other motive, it is not clear how a partition by sale would benefit the plaintiff, as he still would be entitled to only his equitable share of the sale proceeds.[8] By contrast, the defendant clearly would be harmed because she would be required to vacate her home and find a new place for her and her family to live using the proceeds from the sale. The legislative history makes clear that § 52-500 (a) was amended to give the court the equitable discretion to avoid such an anomalous result.

Finally, and relatedly, we note that our conclusion is consistent with the well settled principle, in the partition by sale context, that, simply because a party owns by title an undivided one-half interest in property, "it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the

---

[8] See footnote 5 of this opinion.

sale. Equities must be considered and, if established, must be liquidated before distribution is ordered." *Levay* v. *Levay*, 137 Conn. 92, 96, 75 A.2d 400 (1950); see *Hackett* v. *Hackett*, 42 Conn. Supp. 36, 40, 598 A.2d 1112 (1990), aff'd, 26 Conn. App. 149, 598 A.2d 1103 (1991), cert. denied, 221 Conn. 905, 600 A.2d 1359 (1992); see also, e.g., *Cavanagh* v. *Richichi*, supra, 212 Conn. App. 413 ("[b]ecause a partition action is an equitable action, the court has the authority to determine an unequal award on the basis of the evidence presented, including the value of the property and the equitable interests" (internal quotation marks omitted)).

Having concluded that the term "minimal interest," as set forth in § 52-500 (a), contemplates consideration of both a property owner's fee interest *and* any relevant equitable factors, we turn to our review of the trial court's determination that the plaintiff had a minimal interest in the property. At the outset, we observe that the court made several significant factual findings to support that determination, none of which the plaintiff meaningfully contests on appeal. Specifically, the court found that (1) in 2015, the defendant purchased the property with no financial assistance from the plaintiff, (2) the defendant alone paid the mortgage, taxes, and insurance on the property, (3) the plaintiff, along with his son, moved in with the defendant at some point after the purchase of the property, (4) the plaintiff paid the defendant $400 per month for groceries and other household expenses, and he contributed $2000 toward the maintenance of the property, (5) in 2019, the plaintiff vacated the property, taking with him some furnishings purchased by the defendant, (6) the plaintiff did not make a purported $4000 payment to the defendant upon moving out of the property, and (7) the plaintiff has not made any financial contributions toward the property after moving out in 2019. In light of these findings,

and mindful that "we must make every reasonable presumption in favor of the correctness of its action"; (internal quotation marks omitted) *DiCerto* v. *Jones*, supra, 108 Conn. App. 189; we conclude that the court did not abuse its discretion in determining that, notwithstanding his status as a joint tenant of the property, the plaintiff had a minimal interest in the property for purposes of § 52-500 (a). See *Zealand* v. *Balber*, 205 Conn. App. 376, 385–86, 257 A.3d 411 (2021) (upholding trial court's determination that plaintiff, tenant in common, had minimal interest in property, which was supported by findings that (1) defendant was " 'sole source of providing the moneys' " to purchase property, to make improvements to property, to purchase furnishings, artwork, and other artifacts, and to take on mortgage debt and other expenses, (2) property was not parties' principal residence and was used in limited capacity for approximately three and one-half years, and (3) parties had not reached agreement as to disposition of property if they parted ways).

To support his position that the court incorrectly determined that he had a minimal interest in the property, the plaintiff principally relies on *Fusco* v. *Austin*, 141 Conn. App. 825, 64 A.3d 794 (2013). His reliance is misplaced. In *Fusco*, the trial court determined that the plaintiff's joint tenancy did not constitute a minimal interest in the property, "particularly in view of the fact that [the plaintiff] lived on the property for twenty-three years and acquired his interest at the same time the defendant acquired her interest." Id., 833–34. Moreover, the court further "specifically found that during the period of the parties' cohabitation, their contributions to the property were relatively equal"; id., 834; and that, at the time of the closing, the parties had executed an agreement providing in relevant part that, "if the property is sold, the defendant will receive 55 percent of the net proceeds and the plaintiff will receive 45

percent of the net proceeds, subject to either party's claim for verified costs for property improvements." (Internal quotation marks omitted.) Id., 827. In stark contrast to the trial court's findings in *Fusco*, in the present case, (1) the parties, who were in a romantic relationship, lived together at the property for approximately four years, (2) the defendant purchased the property and paid the mortgage, taxes, and insurance for the property without financial assistance from the plaintiff, who acquired his interest in the property by way of a quitclaim deed a couple of years after the purchase, (3) the parties' contributions to the property were far from equal, and (4) there was no evidence of any agreement setting forth the parties' respective rights and responsibilities concerning the property. Thus, *Fusco* does not advance the plaintiff's position.

In sum, we conclude that the court did not abuse its discretion in determining that the plaintiff had a minimal interest in the property for purposes of § 52-500 (a).

## II

The plaintiff next claims that the trial court abused its discretion in awarding him, pursuant to § 52-500 (a), $2000 in just compensation for his interest in the property, which equates to 1.35 percent of the $148,000 in equity in the property. The plaintiff maintains that the court failed "to consider the ownership percentages of the parties . . . and the amount of monthly contribution [the plaintiff] provided while living in the residence." We are not persuaded.

"In a partition action, a court is required to balance the equities between the parties. . . . [I]t is not always true that each tenant in common or joint tenant is entitled to equal shares in the real estate. . . . Because a partition action is an equitable action, the court has the authority to determine an unequal award on the basis of the evidence presented, including the value of the

property and the equitable interests of the parties. . . .
Additionally, as our Supreme Court has explained in
the context of our government takings jurisprudence,
[t]he question of what is just compensation is an equita-
ble one rather than a strictly legal or technical one."
(Citations omitted; internal quotation marks omitted.)
*Cavanagh* v. *Richichi*, supra, 212 Conn. App. 413–14.

When determining just compensation, a trial court
does not merely consider the parties' ownership per-
centages, but, rather, "[the] court may take into consid-
eration contributions, including improvements, that the
parties have made to the subject property in its determi-
nation of just compensation. See, e.g., *Zealand* v.
*Balber*, [supra, 205 Conn. App. 393–94] ('[i]n light of
those contributions, the court awarded the plaintiff
$25,000 as just compensation'); *Young* v. *Young*, 137
Conn. App. 635, 651, 49 A.3d 308 (2012) (trial court
properly considered plaintiff's expenditures related to
upkeep, including mortgage payments, household
repairs and grounds maintenance and taxes, against
countervailing claims for use and occupancy); *Hackett*
v. *Hackett*, 26 Conn. App. 149, 150, 598 A.2d 1103 (1991)
(following partition sale, party may 'be compensated
out of the proceeds from the sale of the parties' jointly
owned property for his past payments for mortgage,
insurance, taxes, improvements and repairs'), cert.
denied, 221 Conn. 905, 600 A.2d 1359 (1992)." *Cavanagh*
v. *Richichi*, supra, 212 Conn. App. 416–17. In *Fernandes*
v. *Rodriguez*, supra, 90 Conn. App. 601, for example,
the trial court found the monetary contributions of each
party toward the purchase of the property at issue to be
particularly relevant to its determination of the equities
and, despite the plaintiff's status as a joint tenant,
awarded him a 5 percent equitable interest in the prop-
erty. Id., 610–12.

Here, the court found that the plaintiff did not contrib-
ute financially to the property's purchase, mortgage,

taxes, or insurance and that he participated financially only to the extent of (1) $2000 in maintenance expenses and (2) $400 per month for groceries and other household expenses during most of the time that he lived with the defendant (a period during which his son also lived in the home). Moreover, the court expressly did not credit the plaintiff's claims of various contributions to the maintenance of the property. In light of these findings based on the evidence presented, we conclude that the court did not abuse its discretion in making its award of just compensation.

Insofar as the plaintiff argues that his one-half title ownership interest in the property as a joint tenant entitles him to 50 percent of the equity, that argument has been squarely rejected by our appellate courts. See id., 609 ("One of the defendant's principal arguments on appeal is that the court's initial finding that each party possessed a one-half interest in the property as joint tenants required the court to award him one half of the proceeds of the partition sale. This contention finds no support in the case law." (Footnote omitted.)); see also *Levay* v. *Levay*, supra, 137 Conn. 96 ("Although each party was the owner of an undivided one-half interest in the property, it does not follow that he or she will necessarily be entitled to equal shares of the moneys obtained from the sale. Equities must be considered . . . ."); *Zealand* v. *Balber*, supra, 205 Conn. App. 387 ("it is not always true that each tenant in common . . . is entitled to equal shares in the property" (internal quotation marks omitted)). Indeed, we previously have affirmed monetary awards of single-digit equitable interests in the context of one-half ownership interests. See, e.g., *Zealand* v. *Balber*, supra, 379–80, 393–94 (awarding plaintiff just compensation constituting approximately 5.7 percent equitable interest, despite plaintiff's status as tenant in common with one-half ownership interest); *Fernandes* v. *Rodriguez*, supra,

90 Conn. App. 609, 612 (awarding plaintiff 5 percent equitable interest following sale of property, despite plaintiff being joint tenant with one-half ownership interest).

In sum, we conclude that the court did not abuse its discretion in its award of just compensation to the plaintiff for his interest in the property.

The judgment is affirmed and the case is remanded for the purpose of setting a new date by which (1) the plaintiff shall transfer his interest in the property by quitclaim deed to the defendant, and (2) simultaneously therewith, the defendant shall transfer to the plaintiff the sum of $2000 as just compensation.

In this opinion the other judges concurred.